[Civ. No. 7797. Second Appellate District, Division Two.—June 28, 1933.]

PAUL F. CHAPMAN, Administrator, etc., Respondent, v. L. E. EDWARDS et al., Appellants.

George L. Greer and Jennings & Belcher for Appellants.

Mulroney, Murphy & Doherty and Murphy & Doherty for Respondent.

PARKER, J., *pro tem.*—This was an action to recover damages as a result of the death of one Charles Jesse Chapman. The action was against L. E. Edwards and C. A. Edwards as copartners doing business under the firm name and style of "Edwards Bros." and against one John Klein as an individual. The cause of action was based upon the theory that the death of Chapman was caused by the negligence of the defendants. This brief statement will suffice as a general statement, inasmuch as the sole point to be considered does not require further detail.

After trial by jury a verdict was returned in favor of plaintiff and against all defendants in the sum of $15,000. A new trial having been denied, judgment followed pursuant to the verdict. Defendants Edwards, who will hereinafter be referred to as Edwards Bros., or Brothers, appeal. No question is presented on the question of negligence of defendant Klein nor is there any point made as to the amount of damages awarded. It is not contended that the court erred in any respect, whether in rulings on the admission of evidence or in instructing the jury. It is apparently conceded that defendant Klein was guilty of negligence proximately causing the death of Chapman. The sole point urged is that Edwards Brothers are in nowise responsible for the negligence of Klein for the urged reason that at all of the times surrounding the happening of the unfortunate event Klein was an independent contractor. We may here narrate the facts as to the relationship of Klein and Edwards Brothers. The last named were contractors engaged under contract to do the excavating preparatory to the construction of a large building in the city of Los Angeles. The excavating contract involved the performance of much work and labor, calling for the use of much equipment and many men and trucks. Klein, as far as the record indicates, was an individual owning a truck.

We phrase thusly to negative the idea that Klein was engaged in the trucking business, with men and equipment. As far as indicated Klein owned a truck and obtained employment for himself and this one truck whenever and wherever work was available. After Edwards Bros. entered upon the excavation it became desirable to move the dirt faster. Thereupon, the office girl of Edwards Bros. telephoned to Klein and inquired if he was then working. When informed that he was not working she told him he could go to work on the job of Edwards Bros. That was all of the conversation and forms the basis of the arrangement between Edwards Bros. and Klein. The girl had authority to thus phone Klein but had no authority further than to tell him to report for work. The excavation was being done by means of a shovel, steam or gas, which lifted the dirt and dropped the same into trucks, which trucks thereafter removed the dirt from the premises. Accordingly, Klein reported with his truck. He had worked for or been engaged by Edwards Bros. before and being familiar with the work required no general instructions. He just pulled his truck in under the shovel, obtained his load and drove away. The foreman told him his compensation would be $1.75 per load. Within a few days thereafter Edwards Bros. voluntarily and arbitrarily raised the price per load to $2. The reason given for the raising of the price per load appears as follows: "If I remember rightly we could see that they were not going to make their wages; and so, rather than have them dissatisfied, I think, we raised it to $2.00." As stated, there were a number of trucks used on the job. All but one or two, out of a possible dozen, were operated by Edwards Bros. Klein reported for work at the same time as the other trucks each day and all trucking ceased when the shovel stopped. The obvious reason for this being that when the shovel was idle there was no dirt to haul. The shovel and its operation was under the control of Edwards Bros., whose foreman directed its movements as far as placement was concerned. The one person on the job who directed the work of the trucks was a foreman called Adolph. It was stipulated that Adolph was in charge; that he directed where he wanted the steam shovel to work and moved it from place to place and directed the trucks to come under it when

they were ready to load; in other words, the trucks were acting, in the loading, under his direction. Adolph had control over all of the trucks, hired, rented or owned, to the extent of telling them when he wanted to have them loaded. He would tell them to get in their place; but most of the time they just ran automatically. As the testimony went "they had sense enough to see for themselves what to do". Adolph, the foreman, would always tell Klein when it was his last load at night. Klein was paid each month for his work, computed according to the loads hauled. According to the testimony of Edwards, he was hired for the job, if he wanted it—it was up to himself whether he wanted to stay or not; that is, his truck was hired.

There is no further need of detailing the situation. In the discussion of appellants' claim there may be from time to time statements of fact which will, in each instance, be deemed to reflect the record, unless otherwise noted.

An independent contractor is one, who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work. (14 R. C. L., p. 67.) Like many other definitions this statement serves as a generality. However, as a working definition this has been generally accepted, with occasional additions. The books abound in applications of the term, and it will be found that, as in many other instances, the question whether or not one is an independent contractor is to be determined largely from the facts of the particular case under observation. Throughout the body of the law we find a careful selection of words in describing a situation. Rarely, if ever, do we find words used which do not upon first contact reveal the general idea sought to be conveyed. And so here. The term "independent" is descriptive of a contractor. A contractor, obviously, is one party to a contract or one who has contracted to do or perform certain work. And it becomes perhaps a commonplace to assume that every contract contains within itself everything that is to be done or performed by each party thereto and the consideration underlying or supporting the obligation. And so, at the outset, where it is claimed that a party was an independent contractor, we may first inquire the nature of the contract or whether there was any con-

tract. Turning then to the instant case, we inquire as to Klein's contract. He had no written contract and there is in the record nothing to indicate the terms, if any, upon which he undertook the work. The job was one entire job, not subdivided into definite or any portions; it consisted of one entire excavation of defined area. Everyone employed in the said excavation worked together to a common end. There were no means of distinguishing the work of a hired truck or an owned truck. There was no definite scale of compensation. And all of the work was to be done upon the premises of the employer, or the premises occupied by the employer in the discharge of the main contract of excavation. There was no work that Klein could do independent of the employer, inasmuch as the latter being in exclusive control and management of the shovel there would be no dirt to remove until the shovel furnished the load. There was no discretion vested in Klein other than to get under the shovel in his turn with the other trucks of the employer and get his load. There was no obligation upon him to take any dirt nor was there any liability imposed upon or assumed by him if he chose not to haul. Likewise, there was no obligation upon Edwards Bros. to furnish sufficient dirt to load the truck nor was there any obligation on Edwards Bros. to continue the employment for any period. It seems generally conceded that a test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. The power of the employer to terminate the employment at any time is a strong circumstance tending to show the subserviency of the employee, since it is incompatible with the full control of the work usually enjoyed by an independent contractor. Perhaps no single circumstance is more conclusive to show the relationship of an employee than the right of the employer to end the service whenever he sees fit to do so. (*Press Publishing Co.* v. *Industrial Acc. Com.*, 190 Cal. 114 [210 Pac. 820].)

 The real test by which to determine whether a person is acting as the servant of another is to ascertain whether, at the time when the injury was inflicted, he was subject to such person's orders and control and was liable to be discharged for disobedience or misconduct. (*Western Metal*

*Supply Co.* v. *Pillsbury,* 172 Cal. 407–417 [156 Pac. 491, Ann. Cas. 1917E, 390].) Other factors which may be considered are the hours of labor, terms of compensation, place where work is done and manner and nature of work to be performed. These factors are discussed in an exhaustive note in 78 American Law Reports, 720, to which reference is made. ■ In the case before us the hours of labor for Klein were exactly those of the admitted employees and servants. He could work at no other time. His compensation was arbitrarily fixed by the employer for the purpose, as stated by the employer, of assuring him a fair wage. All of the work was done upon the premises under the control of his employer. Whatever argument may be made, we must eventually come back to one undenied and undeniable fact that the entire work in hand was the excavation of the lot upon which a building was to be erected. Some person must have been in control of this work as an entirety. It would seem absurd to hold that Edwards Bros. were in control of the work in as far as affected all of the trucks and men except Klein and his truck. The method and manner of removing the dirt was one entire plan. Klein had no right to remove the dirt in his own way. He had to await his turn. As an example, at or about the exact time of the accident it was Klein's desire to load up before lunch and get out. His orders from the foreman were to wait and get his load after lunch for the reason that the shovel was to be moved. We fail to find one independent act that Klein could perform upon the premises. The record does not disclose where, at any time while on the premises, Klein was beyond the immediate control of Edwards Bros. Where some fifteen trucks and drivers are engaged in the same labor to a common purpose and working together at all times it would tend to disorganization rather than toward system to deem that one was an independent contractor merely because he owned the truck he drove. If this particular one were independent there surely must be some way through which he could manifest his independence. After all, a truck remains but an appliance, regardless of its size; a super wheelbarrow as it were. If a person should furnish his own wheelbarrow and go down into a pit to work, with a compensation based upon what the boss thought would allow him fair wages, it would seem a far stretch of prin-

ciple to accord to his employment the dignity of an independent contractor. *Hillen* v. *Industrial Acc. Com.,* 199 Cal. 577 [250 Pac. 570], affords an illustration of the principle. The case involved a shingler whose employment was to lay shingles under a mutual understanding that when he came on the job it would be $1.25 per thousand and there was nothing further said about the agreement to shingle and when each job was done the bill would be made per thousand and after the bill was approved it would be paid. Everything was used in the actual shingling, namely hatchet, snips and apron. Further, when necessity required the shingler hired other men to assist him, none of whom were carried upon the employer's pay-roll. There was no specified period of labor per day. The shingler was held to be an employee rather than an independent contractor. We note again this significant language: "Coincident with the right of control is the right of either employer or employee to terminate the relation without liability. This is but another way of stating the rule, for the right to immediately discharge involves the right of control." (See, also, *Eng-Skell Co.* v. *Industrial Acc. Com.,* 44 Cal. App. 210 [186 Pac. 163].) Without further discussion we may conclude by stating that it must be conceded that appellants' strongest showing is met with a showing by respondent which leaves the question debatable. In other words, conceding that there may be certain features of the employment from which an inference supporting the relationship of an independent contractor may be drawn, yet it is equally true that there are present many facts and circumstances from which it might be reasonably inferred that the relationship was that of master and servant. ▮ It is only where the evidence is reasonably susceptible of but a single inference that the question of whether one is an employee or an independent contractor becomes one of law for the court. (*Nelson* v. *Stukey,* 89 Mont. 277 [300 Pac. 287, 78 A. L. R. 491], with cases therein cited.) Whether or not the relation of employer and employee exists under the contract in this case is a mixed question of law and fact to be determined in the court below like any other question and the finding in the court below is binding upon this court, provided there be any competent evidence to support the finding. (*Hillen* v. *Industrial Acc. Com., supra; Johnson* v. *Department of Indus-*

*trial Relations,* 101 Cal. App. 1 [281 Pac. 440], *May* v. *Farrell,* 94 Cal. App. 703 [271 Pac. 789], *Western Pac. R. R. Co.* v. *Industrial Acc. Com.,* 193 Cal. 413 [224 Pac. 754], *Case of Murray,* 130 Me. 181, 154 Atl. 352, 75 A. L. R. 720] [with annotation], and *Lowmiller* v. *Monroe, Lyon & Miller, Inc.,* 101 Cal. App. 147, at p. 150 [281 Pac. 433, 282 Pac. 537].)

The jury was fully and correctly instructed as to the law and its application to the facts of the case, with particular reference to the question of independent contractors and employees. Not a suggestion of criticism is presented as to these instructions. We think it was correctly determined that the relationship of employer and employee existed between Klein and Edwards Bros. at the time of the accident.

The judgment is affirmed.

Works, P. J., and Stephens, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 25, 1933, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 24, 1933.