[L. A. No. 17668.   In Bank.—February 19, 1941.]

THE S. A. GERRARD COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, MACERIO VALDEZ et al., Respondents.

Donald Gallagher and Marguerite Arnold for Petitioners.

Everett A. Corten and Dan Murphy, Jr., for Respondents.

EDMONDS, J.—The proceedings in which the Industrial Accident Commission made an award of compensation in favor of Macerio Valdez are before this court upon the return to a writ of *certiorari* issued by the District Court of Appeal. The only question for decision is whether Valdez, at the time he was injured, was an employee of the petitioner S. A. Gerrard Company. The award against the petitioner and State Compensation Insurance Fund, its insurance carrier, is based upon findings that it was the special employer of Valdez.

At the time of the accident, the respondent W. Hanaoka had leased land from the Gerrard Company and was growing melons upon it. He employed Valdez as a picker. The agreement between the Gerrard Company and Hanaoka for the use of this land was stated in three written contracts. One of these was a lease which provided that the land was to be used for the purpose of growing crops of cantaloupes, honeydews or honeyballs as the Gerrard Company might direct, and that the provisions of a contemporaneously executed distributing agreement and of a crop mortgage, were a part of it.

By the distributing agreement, W. Hanaoka appointed the Gerrard Company as his exclusive agent to perform all engine work necessary to prepare the fields for planting; to haul the melons to its packing shed; to sort, pack and load the melons on cars and trucks; and to market and distribute them. Hanaoka agreed to prepare the premises for planting; to plant the same with the kind and variety of melons as directed by the Gerrard Company; to care for the melons until their maturity; to pick and gather them into field centers; and to load them on the Gerrard Company's trucks. Another provision was that all picking should be done under the supervision of and in accordance with the direction of the Gerrard Company. Hanaoka agreed, also, to hire from the Gerrard Company any mules he needed and to purchase all feed from it. He also agreed to furnish all labor, materials, and equipment; to care for equipment of the Gerrard Company; to purchase all seed necessary for the growing of the crops from it; and to pay a proportionate part of its advertising costs.

The Gerrard Company agreed to sell the seed without warranty or guarantee; to furnish field crates for picking purposes; to advance the grower actual harvesting cost during the harvest season; to make loans to the grower, as in its opinion, were necessary to defray the operating expenses; and to use its best efforts to sell the melons. The agreement further stipulated that if, in the opinion of the Gerrard Company, marketing conditions indicated a probable loss in the handling of the melons, it was not obligated to accept, pack, load or make any advances while such conditions existed. Another provision of the contract was that if a proration plan was in effect, the company was not obligated to accept melons in excess of the allowed quantity, and it should have the sole right to determine whether the melons were subject to prorate control. It was also given the right to vote and represent the melons, or the acreage thereof, and to act to the same extent as if it were the sole owner of the crop.

The mortgage made the crops security for the payment of land rental amounting to $3,200 and all sums loaned under the terms of the distributing agreement. It provided that in the event of any litigation affecting the crop the Gerrard Company might enter the premises and take all necessary measures to protect the crop; also, it might at any time enter to view the crop or take measures to protect it; and might sell and dispose of it at such time and for such sum as it may deem proper.

The decisive question in the case is the relationship between the Gerrard Company and W. Hanaoka. If he was an employee of the Gerrard Company, then Valdez was also. On the contrary, if W. Hanaoka was an independent contractor then Valdez, as his employee has no rights against the Gerrard Company or its insurance carrier.

An independent contractor is "one who renders service in the course of an independent employment or occupation, following his employer's desires only in the results of the work, and not the means whereby it is to be accomplished." (*Moody* v. *Industrial Acc. Com.*, 204 Cal. 668, 670 [269 Pac. 542, 60 A. L. R. 299]; Restatement, Agency, sec. 2.) On the other hand, the relationship of master and servant or employer and employee exists whenever the employer retains the right to direct how the work shall be done as well as the result to be accomplished. (*Press Pub. Co.* v. *Industrial Acc.*

*Com.,* 190 Cal. 114 [210 Pac. 820]; *Winther* v. *Industrial Acc. Com.,* 16 Cal. App. (2d) 131 [60 Pac. (2d) 342]; Restatement, Agency, sec. 2.) But this rule requires that the right to exercise complete or authoritative control, rather than mere suggestion as to detail, must be shown. (*Moody* v. *Industrial Acc. Com., supra; Winther* v. *Industrial Acc. Com., supra.*) Also, the right to control, rather than the amount of control which was exercised, is the determinative factor. (*Hillen* v. *Industrial Acc. Com.,* 199 Cal. 577 [250 Pac. 570]; *Moody* v. *Industrial Acc. Com., supra;* Restatement, Agency, sec. 2.) ■ And if there is a substantial conflict in the evidence regarding the status of the person claiming compensation, the finding of the Industrial Accident Commission will not be disturbed. (*Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807 [159 Pac. 721]; *Carlson* v. *Industrial Acc. Com.,* 213 Cal. 287 [2 Pac. (2d) 151].)

■ Under Hanaoka's contracts with the Gerrard Company, he had no right to do anything with the melon crop, from planting to sale, without its consent. In form he was an independent contractor; in effect he was an employee of the Gerrard Company and its right to control his operations extended to all of the persons who worked for him in raising and picking the crop. This evidence clearly supports the finding that Valdez was an employee of the Gerrard Company under the principles applied in *Carlson* v. *Industrial Acc. Com., supra.*

The petitioners place great reliance upon *Winther* v. *Industrial Acc. Com., supra,* but it is not in point upon the facts now before the court. In that case, Winther, who owned a ranch, made an agreement with one Rueda to pick an olive crop and transport it to the packing house for $16 per ton. Rueda employed a man to assist him. The latter was injured and sought compensation from Winther. Because there was no evidence showing that Winther was interested in the slightest degree in the means by which the work should be done or in the details of its accomplishment, Rueda was held to be an independent contractor. The evidence concerning the right of the Gerrard Company to control all of W. Hanaoka's operations compels the contrary holding in the present controversy.

The award is affirmed.

Shenk, J., Traynor, J., Curtis, J., Carter, J., and Gibson, C. J., concurred.