[Civ. No. 13773.   Second Dist., Div. Two.   Oct. 28, 1942.]

YUCAIPA FARMERS COOPERATIVE ASSOCIATION et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, ROSETTA FENNELL et al., Respondents.

F. Britton McConnell, J. L. Kearney and Herbert S. McCartney, Jr., for Petitioners.

Everett A. Corten and J. Gould for Respondents.

MOORE, P. J.—A writ of review was heretofore issued under the apprehension that at the time she received her injuries respondent Rosetta Fennell was an employee of respondent Thompson and not of Yucaipa Farmers Cooperative Association, hereinafter referred to as Yucaipa. Upon a more thorough study of the case we have derived a different conclusion.

June 21, 1941, Mrs. Fennell accompanied by her husband and Mr. and Mrs. Beatty called at the office of Yucaipa in quest of employment to pick cherries. They were told by the party in charge that Yucaipa had no need of laborers but that Mr. Thompson needed some pickers on the Kuffel ranch. The group then proceeded to the Kuffel ranch where they found respondent Thompson. He told them that he was foreman for the association; that Yucaipa was doing the picking; that he was gathering the cherries for Yucaipa; that he was in charge; that he was not "contracting these cherries himself . . . that he was merely a foreman for the Yucaipa people." He then stated that it was necessary for him to ascertain whether Yucaipa had the barrels for the cherries. After having his inquiry satisfied at the office of Yucaipa, Thompson returned with the Fennells and Beattys to the orchard and put them to work.

After Mrs. Fennell had worked for a short time, she suffered some physical injuries while picking cherries. She endured pain and discomfort during her ten days on the Kuffel farm, but did not abandon her work. About fourteen days after the accident at Thompson's suggestion, Mrs. Fennell called on Yucaipa and inquired whether or not they would pay her doctor's bill incurred as a result of her injuries. She was there told that payment would not be made for the reason that she had waited too long. The employment of Mrs. Fennell and her associates continued for about ten days, during which time Mr. Thompson supervised all of their activities and paid them in the orchard with cash at the termination of their employment.

Mr. Homer T. Hill, assistant manager of Yucaipa, was called to the stand after the testimony of Mrs. Fennell and her associates had been received. He testified that the executor of the Kuffel estate had taken out a membership in Yucaipa; that he had requested Yucaipa to supervise the harvesting of the crop on the Kuffel estate so that the association "could pick it up and deliver it at the plant and then sell it or haul it to the commisison men here in Los Angeles"; that Yucaipa had contracted with Thompson to gather the Kuffel cherries and agreed to pay him 2½ cents per pound for harvesting the crop; that Yucaipa officials did not know anything about who was employed by Thompson or how much they were paid; that Yucaipa had no interest or control over his disposition of the moneys to be paid him for harvesting the cherries.

If the testimony had closed at this point, petitioners would be in a more favorable position than they were placed by the further testimony of Yucaipa's assistant manager. The following is his testimony relating to Yucaipa's contract with Thompson:

"Q. If about the third day he was on the job nothing happened out there, Thompson would be put off that place pretty quick, wouldn't he?

"A. That's right.

"Q. He was just hired to pick this fruit and you paid him according to the amount of fruit that was delivered at your warehouse?

"A. Yes, sir.

"Q. If that fruit was not delivered in a reasonable time, you got some one else to do the job?

"A. Yes.

"Q. And you had no recourse?

"A. None whatever. . . .

"THE REFEREE: In other words, you don't know who is supposed to take care of these people then?

"A. No, sir."

From this testimony it is emphasized that Yucaipa had already crystallized its own interpretation of its engagement of Thompson as an independent contractor. Such construction of the agreement is further justified by the answer given Mrs. Fennell on the occasion of her request for payment of her doctor's bill and by the fact that Yucaipa supplied the equipment used by the workers in picking the cherries.

The workers having applied for employment at the Yucaipa office were sent to Thompson who was in charge of the Kuffel land which was under contract to Yucaipa to supervise the harvesting of the cherries grown there. Not only did Thompson hold himself out to the workers as foreman of the pickers for Yucaipa, but likewise did Yucaipa put Thompson in the position of one possessed of authority to act on behalf of Yucaipa. Nothing was said by him or by the officers of Yucaipa to indicate that he had contracted on his own account to gather the cherry crop. His statement to the pickers was that he was Yucaipa's foreman. When they asked Yucaipa for employment, its office sent them to Thompson.

█ Upon such evidence, for the commission to have determined that Milt Thompson individually was employer of Mrs. Fennell would not only have operated an injustice but also, it would have gone contrary to the decisions of the appellate courts. █ The power of a person at will to terminate the service of one engaged to perform a task is a persuasive circumstance that the relationship was that of master and servant. (*Chapman* v. *Edwards,* 133 Cal.App. 72, 77 [24 P.2d 211].) When a person performing work for another is subject to the orders, control, and direction of such other, and is liable to be discharged for disobedience, then he is not an independent contractor, but an employee. (*Chapman* v. *Edwards, supra.*)

█ And where the contract of the parties contains no terms expressly affirming or denying the power of control such power must be determined from the reasonable inferences to be drawn from all of the circumstances, the relationship and character of the parties; the nature of the work to be done;

the time within which it is to be completed, and the conduct of the parties toward each other with reference to the subject of the contract. (*Press Publishing Co.* v. *Industrial Acc. Com.*, 190 Cal. 114, 120 [210 P. 820].) ■ If from all of the facts only a single inference and one conclusion may be drawn, whether one be an employee or independent contractor is a question of law (*Chapman* v. *Edwards, supra*); but if from all the circumstances either may reasonably be determined, it is a question for the trier of the facts to answer.

■ There is yet another reason why Yucaipa must be held as employer of Mrs. Fennell. All appearances indicated to the workers that Yucaipa was the owner of or in authority over the Kuffel cherry crop. If it was not in authority, it was the ostensible agent of an undisclosed principal. There is no intimation that its management ever stated to the workers at any time that it was not under contract with the Kuffel estate. Therefore aside from the other considerations above discussed, since Yucaipa was the ostensible principal, it was liable as the employer of Mrs. Fennell and her associates at the time she received her injuries. (*Cowell* v. *Industrial Acc. Com.*, 11 Cal. 2d 172 [78 P.2d 1016].)

The award is affirmed.

Wood, (W. J.) J., and McComb, J., concurred.