[Sac. No. 5826. In Bank. Apr. 1, 1947.]

MANUEL PERGUICA et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, RUTH WALKER et al., Respondents.

Leonard, Hanna & Brophy and Donald B. Brophy for Petitioners.

R. C. McKellips, Edward A. Sarkisian and John A. Rowe, Jr., for Respondents.

SPENCE, J.—Petitioners seek annulment of an award based upon the death of one Dallas Walker, who was fatally injured while transporting scaffolding to a house which petitioner Manuel Perguica was having built and on which the deceased was to do the lathing. In challenge of the jurisdiction of the respondent commission to make such award, petitioners urge: (1) That Walker was an independent contractor but (2) even if he were an employee of Perguica, the injury was not one arising out of and occurring in the course of the employment. Since the record sustains petitioners on the first issue, the second need not be here considered.

There is no dispute as to the facts. Perguica, a farmer, was having a house constructed on his farm. He hired men on a daily wage basis to do the carpenter work, but he became dissatisfied with such arrangement because it permitted too much "loafing around . . . on [his] pocketbook." After that experience with the carpentry, Perguica entered into a contract with one Witmer for the plastering to be done for a lump sum payment. But Witmer could not proceed with his work until wire netting or screening was attached to the outside of the house to serve as a lathing for the plaster. Accordingly, Witmer brought Walker, a lather by occupation, to the farm and introduced him to petitioner as "the fellow to do the job; to put [up] the wires." Walker agreed to do the wiring for "fifteen cents per yard" and on that basis he "got the job." Perguica knew nothing about lathing and did not discuss any of the details of the work with Walker; but just took Witmer's word that Walker "was a good worker" and that the quoted price was the general charge in that locality. Perguica "was expecting" that Walker would "begin on Thanksgiving Day" but that he would work as he pleased. Payment was to be made after the work was done, the amount

to be computed according to the number of rolls of wire used. Perguica was to furnish the wire, but Walker was to provide his own tools and equipment. Prior to the commencement of the work on the house Walker needed a scaffold, and it was while he was in the act of transporting this equipment by truck to Perguica's farm late on Thanksgiving Day that Walker sustained his fatal injuries.

Witmer was not a witness before the respondent commission; so the nature of Perguica's conversation with Walker in the presence of Witmer and its legal effect rest entirely upon the testimony of Perguica. ■ Generally speaking, it is a question of fact to be determined by the commission, from the evidence adduced, whether the essential employer-employee relationship exists (*Riskin* v. *Industrial Acc. Com.*, 23 Cal.2d 248, 255 [144 P.2d 16]), and the commission's finding on that issue will not be disturbed where it is supported by substantial evidence. (*S. A. Gerrard Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 411, 414 [110 P.2d 377].) ■ But "if from all the facts only a single inference and one conclusion may be drawn, whether one be an employee or an independent contractor is a question of law." (*Baugh* v. *Rogers*, 24 Cal.2d 200, 206 [148 P.2d 633, 152 A.L.R. 1043] ; *Yucaipa Farmers etc. Assn.* v. *Industrial Acc. Com.*, 55 Cal.App.2d 234, 238 [130 P.2d 146] ; see, also, *Burlingham* v. *Gray*, 22 Cal.2d 87, 100 [137 P.2d 9].) ■ Here any reasonable view of the evidence on the issue of Walker's status compels the conclusion that petitioners met their burden of proving that he was an independent contractor (Lab. Code, § 5705 (a)), and that the commission's award based on a contrary finding is not sustainable. (*Ponsetti* v. *Industrial Acc. Com.*, 5 Cal.App.2d 498 [42 P.2d 1043] ; *Winther* v. *Industrial Acc. Com.*, 16 Cal.App.2d 131 [60 P.2d 342] ; *State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 46 Cal.App.2d 526 [116 P.2d 173].)

An independent contractor is one "who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." (Lab. Code, § 3353.) ■ The distinction between the status of an independent contractor and that of an employee rests upon several important considerations. A material and often conclusive factor is the right of an employer to exercise complete and authoritative control of the mode and manner in which the work is performed. The existence of such right of control, and

not the extent of its exercise, gives rise to the employer-employee relationship. (*S. A. Gerrard Co.* v. *Industrial Acc. Com., supra,* 17 Cal.2d 411, 413-414; *Riskin* v. *Industrial Acc. Com., supra,* 23 Cal.2d 248, 253; *Industrial Indemnity Exchange* v. *Industrial Acc. Com.,* 26 Cal.2d 130, 135 [156 P.2d 926].) ▮ Strong evidentiary support of the employment relationship is "the right of the employer to end the service whenever he sees fit to do so." (*Press Publishing Co.* v. *Industrial Acc. Com.,* 190 Cal. 114, 120 [210 P. 820] ; see, also, *Hillen* v. *Industrial Acc. Com.,* 199 Cal. 577, 582 [250 P. 570] ; *Riskin* v. *Industrial Acc. Com., supra,* 23 Cal.2d 248, 253; *California Employment Com.* v. *Los Angeles etc. News Corp.,* 24 Cal.2d 421, 425 [150 P.2d 186] ; *Yucaipa Farmers etc. Assn.* v. *Industrial Acc. Com., supra,* 55 Cal.App.2d 234, 237.) "An employee may quit, but an independent contractor is legally obligated to complete his contract." (*Baugh* v. *Rogers, supra,* 24 Cal.2d 200, 206-207; *Los Flores School Dist.* v. *Industrial Acc. Com.,* 13 Cal.App.2d 180, 183 [56 P.2d 581].) There are "other factors to be taken into consideration," as stated in *Empire Star Mines Co.* v. *California Employment Commission,* 28 Cal.2d 33, at page 43 [168 P.2d 686] : "(a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, °tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, ` whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee. (Rest., Agency, § 220; Cal.Ann., § 220.)"

▮ The controlling facts as to the working arrangement between Perguica and Walker stand undisputed, by inference or otherwise. It appears to have been simply an informal agreement showing that Perguica was interested solely in the final result to be attained, the lathing of his house; but that he had not the slightest concern either in the means by which the work should be done or in the details of its accomplishment. Perguica testified that he was a "dairy farmer" who knew

nothing about lathing or other work incident to "the building of houses." When asked whether he told Walker "exactly what work there was to be done," Perguica said: "No, I didn't, because I didn't know; he knew." Walker was an experienced lather, and he had undertaken to furnish his own tools and equipment. Perguica agreed to furnish the wire and pay on the "yardage basis," but with respect to any other phase of the work, Perguica testified: "We don't mention anything. He just got the job. He just got the job. That is all that was said. The work should be done; then afterwards I was going to pay him then; I didn't know. I didn't know." Walker was free to set his own hours and days for working, the length of time depending on the job's duration, for Perguica stated that he did not know whether it would take "one day or five days." Nor did Perguica know "whether [Walker] was going to do it all by himself or whether he was going to have anybody to help him." Perguica reserved no right to discharge Walker at will but Walker "just got the job" and was to receive upon its completion "fifteen cents a yard" for the wire used, the customary rate of pay in that locality for such a "specialist." While the preceding carpentering work on Perguica's house had been performed on a "daily wage basis," Perguica was firm in his stand that he did not want such hiring to prevail with respect to other work on his house. Thus, Perguica testified that he employed the carpenters "by the day" because "that's the only way I could get it [the carpenter work]" but he was dissatisfied with such arrangement inasmuch as it permitted "loafing around . . . on [his] pocketbook." To avoid such time-wasting practices at his expense, Perguica decided to adopt a different arrangement with respect to other construction work on his house and to pay "for the job" done, both the "lathing" by Walker and the "plastering" by Witmer.

These considerations demonstrate this to be a case of independent contractorship, and that Perguica and Walker intended it as such, though they never had the opportunity to proceed under their agreement inasmuch as Walker was fatally injured before "the wiring job" was actually commenced. Perguica not only did not reserve the right to exercise any shadow of control over Walker's work, but he could not have done so had he desired. Having no knowledge of the specialized type of work in question, Perguica "called in" an experienced lather, "just as one would summon a plumber, an

auto mechanic, or an electrician" to work "upon his own time and in the exercise of his own knowledge and skill." (*Ponsetti* v. *Industrial Acc. Com.*, 5 Cal.App.2d 498, 500 [42 P.2d 1043].) It is immaterial that another element entered into the factual situation in the Ponsetti case, for the decision is precisely in point in legal principle. While the machinist there involved was "one engaged to repair a dough mixer" for some bakers and was injured while attempting "of his own accord" to "grease the gears," the fact that he so proceeded without instructions was not made the premise of the decision. Rather the determinative factor negativing the propriety of the compensation award was the working arrangement between the parties, emphasizing the bakers' lack of control over the machinist's operations because of his pursuit of "an independent employment or occupation of a highly technical character" and their "want of knowledge and experience in mechanical repairs." Like considerations prevail here in fixing the status of Walker as an "independent contractor" under the established rules.

The award is annulled.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

SCHAUER, J.—I concur. I think, however, that this decision, like that in *Empire Star Mines Co.* v. *California Emp. Com.* (1946), 28 Cal.2d 33 [168 P.2d 686], is substantially inconsistent with the holding of this court in *Pacific Lumber Co.* v. *Industrial Acc. Com.* (1943), 22 Cal.2d 410 [139 P.2d 892]. The facts of that case (material to the relationship of the parties) as established by undisputed evidence and the express finding of the commission (for those facts see dissenting opinion, pp. 423 et seq.) when compared with those of the case at bar do not, in my estimation, admit reasonably of affirming an award in the one case and annulling it in the other. I would concede error in the earlier case and squarely overrule it.

A petition by Respondent Commission for a rehearing was denied May 1, 1947. Gibson, C. J., Carter, J., and Schauer, J., voted for a rehearing.