[Civ. No. 22582. Second Dist., Div. Two. Jan. 15, 1958.]

OLIVER LYLE BATES, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, etc., et al., Respondents.

Charles Metcalfe and Edwin Silver for Petitioner.

Everett A. Corten and Edward A. Sarkisian for Respondents.

RICHARDS, J. pro tem.*—Petitioner seeks review and annulment of an order of the respondent Industrial Accident Commission which determined that at the time of an injury petitioner was performing services for respondent Henry Goden doing business as H & H Catering Company, as an independent contractor, and not as an employee.

Goden was engaged in the catering business carried on by the use of canteen-type trucks which he owned and which bore the name "Travel Lunch, H & H Catering." Each truck had a route which Goden controlled and which consisted of various stops at factories and building projects. The trucks carried sandwiches, pies, soft drinks, candy, nuts and cigarettes which were sold by the driver at the various stops during coffee breaks and at the lunch hour. In the latter part of March 1956, petitioner and Goden entered into an oral agreement whereby the petitioner was to use one of Goden's trucks on a route to be furnished by Goden. By the arrangement between them the petitioner agreed to pay $10 each day for the use of the truck which he was to keep at his own home at night and was to furnish the necessary gas and oil. Goden agreed to provide the insurance on the truck and

---

*Assigned by Chairman of Judicial Council.

to pay for the tires and repairs thereto. Petitioner was required to wear a white uniform with the name "Travelers Lunch, H & H Catering" printed on the back and for the use of which he was to pay Goden $2.00 a week for rental and cleaning. Petitioner was obliged to buy all of his supplies from Goden at a wholesale price and to sell each item at a retail price which was fixed by Goden. The arrangement was terminable at the will of either party. Early each morning, the petitioner ordered and loaded on the truck the supplies which he determined were necessary for the day and gave Goden a receipt for the amount of his purchases. At noon each day, petitioner returned to the plant and paid Goden the $10 rental for the use of the truck and for such merchandise as he had purchased in the morning. Under the arrangement between them the petitioner bore the loss of unsold perishable items such as sandwiches which could not be carried over from day to day. He received no wages and his earnings consisted solely of his profit between the retail and wholesale prices of his sales on the route less the daily truck rental and the costs of gasoline and oil. No deductions were made by Goden from petitioner's cash receipts for income tax withholding purposes or for social security tax payments. Petitioner kept his own records of sales and was not required to make any accounting thereof to Goden. When petitioner started the route no particular instructions were given to him by Goden other than that the serving of the route would require work from 7 a. m. to about 4 p. m. and that the petitioner must keep the truck clean at all times. Additionally Goden advised petitioner not to sell on credit as it might impair his ability to make the required daily cash payment for truck rental and his purchases from Goden. The only evidence of any supervision by Goden over petitioner's daily operation of the route appears to be that on one occasion Goden met petitioner on the route and told him that he should carry more peanuts and candy and that on one other occasion Goden said that he would have "to pull the truck" unless petitioner kept it cleaner. On one occasion and without petitioner's knowledge, Goden put additional supplies on the truck for a new stop on the route but it was abandoned by petitioner after one trial. It also appears that petitioner himself secured another stop for the route and that upon the termination of work he received a credit of $50 from Goden for the right to this location.

On May 29, 1956, petitioner fell from the truck, injuring

his back. He continued to work for a few days and then, on his doctor's advice, told Goden that he would have to rest. Goden put a new man on the truck and petitioner covered the route with the new driver for a part of the first day. Later on petitioner underwent an operation for a ruptured intervertebral disk. About August 1, 1956, he resumed work with a different truck belonging to Goden but gave it up after approximately one week.

█ The sole question for our consideration is whether upon this state of facts, the finding of the commission that the petitioner was an independent contractor and not an employee is supported by substantial evidence as it is a settled rule that the finding of the commission on this issue is conclusive on review unless there is an entire lack of evidence to support it or the only inference that can be drawn from the evidence is contrary to it. (*Brietigam* v. *Industrial Acc. Com.*, 37 Cal.2d 849, 853 [236 P.2d 582]; *Perguica* v. *Industrial Acc. Com.*, 29 Cal.2d 857, 859 [179 P.2d 812]; *Drillon* v. *Industrial Acc. Com.*, 17 Cal.2d 346, 350 [110 P.2d 64]; *Hillen* v. *Industrial Acc. Com.*, 199 Cal 577, 580 [250 P. 570].) █ Where the finding on the relationship issue is supported by inferences which may fairly be drawn from the evidence, even though the evidence be susceptible of opposing inferences, the finding will not be disturbed by an appellate tribunal. (*Riskin* v. *Industrial Acc. Com.*, 23 Cal.2d 248, 254 [144 P.2d 16]; *Pacific Lbr. Co.* v. *Industrial Acc. Com.*, 22 Cal.2d 410, 422-423 [139 P.2d 892]; *Schaller* v. *Industrial Acc. Com.*, 11 Cal.2d 46, 50 [77 P.2d 836]; and *Archbishop* v. *Industrial Acc. Com.*, 194 Cal. 660, 668 [230 P. 1].) █ Whether a workman is an employee or an independent contractor becomes a question of law only when but one inference can reasonably be drawn from the facts. (*Perguica* v. *Industrial Acc. Com.*, supra, p. 859; *Baugh* v. *Rogers*, 24 Cal.2d 200, 206 [148 P.2d 633, 152 A.L.R. 1043]; *Yucaipa Farmers etc. Assn.* v. *Industrial Acc. Com.*, 55 Cal.App.2d 234, 238 [130 P.2d 146]; and *Schramm* v. *Industrial Acc. Com.*, 15 Cal.App.2d 475, 481 [59 P.2d 858].)

█ The rules for determining whether one rendering service to another is an employee or an independent contractor may be thus summarized: An independent contractor is one who renders service in the course of an independent employment or occupation, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished. (Lab. Code, § 3353;

*Perguica* v. *Industrial Acc. Com., supra,* p. 859; *Riskin* v. *Industrial Acc. Com., supra,* p. 253; *S. A. Gerrard Co.* v. *Industrial Acc. Com.,* 17 Cal.2d 411, 413 [110 P.2d 377].)

▉ "A material and often conclusive factor is the right of an employer to exercise complete and authoritative control of the mode and manner in which the work is performed. The existence of such right of control, and not the extent of its exercise, gives rise to the employer-employee relationship. (Citations.) ▉ Strong evidentiary support of the employment relationship is 'the right of the employer to end the service whenever he sees fit to do so.' (Citations.)" (*Perguica* v. *Industrial Acc. Com., supra,* p. 859-860.) ▉ "But this rule requires that the right to exercise complete or authoritative control, rather than mere suggestion as to detail, must be shown." (*S. A. Gerrard Co.* v. *Industrial Acc. Com., supra,* p. 414.) See also *Industrial Ind. Exch.* v. *Industrial Acc. Com.,* 26 Cal.2d 130, 135 [156 P.2d 926]; *Moody* v. *Industrial Acc. Com.,* 204 Cal. 668, 671 [269 P. 542, 60 A.L.R. 299], and *Winther* v. *Industrial Acc. Com.,* 16 Cal.App.2d 131, 136 [60 P.2d 342]. ▉ Complete abnegation of control is not essential to the establishment of the status of independent contractor. Where one person is performing work in which another is beneficially interested, the latter may exercise over the former a certain measure of control which looks to the results to be obtained without creating the relationship of employer-employee. (*Moody* v. *Industrial Acc. Com., supra,* p. 670; *Mt. Meadow Creameries* v. *Industrial Acc. Com.,* 25 Cal.App.2d 123, 128 [76 P.2d 724].) ▉ Whereas the right of control is variously accepted as the principal test of the employment relationship, there are "other factors to be taken into consideration," as stated in *Empire Star Mines Co.* v. *California Emp. Com.,* 28 Cal.2d 33, at page 43 [168 P.2d 686]: "(a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and

(h) whether or not the parties believe they are creating the relationship of employer-employee. (Rest., Agency, § 220; Cal. Ann. § 220.)'' Accord: *Isenberg* v. *California Emp. Stab. Com.*, 30 Cal.2d 34, 39 [180 P.2d 11]; *Tomlin* v. *California Emp. Com.*, 30 Cal.2d 118, 123 [180 P.2d 342]; *Perguica* v. *Industrial Acc. Com., supra,* 29 Cal.2d 857, 860.

While the above defined tests and rules are recognized as helpful, yet no special test, or fact, or circumstance has been found to give a conclusive answer to the question, and in the last analysis each case must turn upon its own peculiar facts and circumstances (*Schaller* v. *Industrial Acc. Com., supra,* 11 Cal.2d 46, 52).

Applying these tests and rules to the evidence here, we are of the opinion that, viewing the evidence in its entirety, the commission could reasonably infer that the relationship between the parties was essentially a merchandising arrangement. Goden placed a sales route in the possession of the petitioner; this route was serviced by a truck which petitioner leased from Goden at a daily rental and for which petitioner furnished the gasoline and oil at his own expense; petitioner was required to buy his supplies from Goden on a cash-and-carry basis and petitioner bore the loss of any unsold perishable items, as well as any losses arising from the extension of credit to his customers. The uniform worn by the petitioner was furnished by Goden but the petitioner was obliged to pay for the laundering thereof. Goden occupied the position of a wholesaler who furnished petitioner, a retailer, with an initial list of stops where petitioner, the retailer, sold the merchandise to customers and collected for his own account the retail prices therefrom. No wages or commissions were paid to the petitioner and his only income from the work was his profit, which consisted of the difference between the wholesale and retail prices of the merchandise which he sold, less his cost of operation and losses on perishable items. Petitioner was not required to make any accounting to Goden of the proceeds received from petitioner's merchandise sales. During the course of his work, petitioner developed an additional sales stop and upon the termination of his work was given a $50 credit therefor against a balance owing by him to Goden. Except for the instance where Goden suggested that petitioner shall carry more peanuts and candy, there is no evidence that Goden supervised the day-to-day operations of petitioner's route. Goden's interest was to sell as much merchandise at wholesale as he could and his interest

in petitioner's activities was to promote retail sales which, in turn, would yield larger profits to the wholesaler. Goden's right to terminate the arrangement is susceptible of being construed as a sanction to protect his interest in the volume of wholesale sales to petitioner in the event that the latter failed to make retail sales commensurate with his market. Thus it could be reasonably inferred that the right of termination was merely a measure of control which Goden could exercise to obtain satisfactory results under the arrangement with petitioner but without creating the responsibilities of an employer-employee relationship.

Ostensibly, certain features of the employment indicated a relationship of employer-employee, but these factors only served to create a conflict in opposing inferences to be drawn from the evidence, which conflict the commission chose to resolve adversely to the petitioner.

In this case, the finding of the commission that the petitioner was an independent contractor, and not an employee, must be sustained. If this court had been sitting as the trier of the facts, it is possible that an opposite conclusion might have been reached. On review, however, it cannot be said that the evidence established the relation of employer-employee as a matter of law. The evidence was susceptible of two opposing inferences. The inference accepted by the commission was reasonable and supported by the evidence, and therefore the commission's finding will not be disturbed.

The order dismissing petitioner's application for workmen's compensation benefits is affirmed.

Fox, Acting P. J., concurred.

Ashburn, J., dissented.

Petitioner's application for a hearing by the Supreme Court was denied March 12, 1958. Traynor, J., was of the opinion that the application should be granted.