[Civ. No. 59106. Second Dist., Div. Two. Sept. 22, 1981.]

KEITH GERMANN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, EDWARD C.
CASTRO et al., Respondents.

COUNSEL

Byhower & Petherbridge and Nicholas C. Byhower for Petitioner.

Banks, Leviton & Kelley, Eugene Leviton, William K. Dietz and Steven S. Kocalis for Respondents.

OPINION

**ROTH, P. J.**—Petitioner Keith Germann seeks review (Lab. Code, § 5950 et seq.) of the finding by respondent Workers' Compensation Appeals Board (Board) that respondent Edward C. Castro (applicant) was Germann's employee for purposes of the Workers' Compensation Act at the time applicant sustained an injury on February 11, 1976. Germann contends applicant was not his employee but an independent contractor and therefore Germann is not liable for payment to applicant for workers' compensation benefits. We agree and annul the WCAB's decision.[1]

---

[1]We initially denied the petition for writ of review. Upon Germann's petition for hearing, however, our Supreme Court granted the petition and remanded the matter to this court with directions to issue a writ of review.

## I

The facts herein are not in substantial dispute. Applicant sustained injury to his right major hand on February 11, 1976, while working as a carpenter on the home owned by Germann.[2] Germann had decided to add a room to his residence and hired an architect, Rodriguez, to prepare the plans. Germann is not a builder or contractor by trade; at the time of injury, he was regularly employed as a manager of data processing for Teledyne.

Rodriguez advised that Germann could proceed with the building by subcontracting out the work rather than just turning the project over to a general contractor. Rodriguez gave Germann a list of contractors and Germann looked up others in the "yellow pages." Germann entered into separate written contracts for performance of the concrete work, electrical work, plumbing, etc. Most of these contracts were with licensed building contractors.

On the list of persons supplied by Rodriguez applicant was listed for carpentry work. Germann called him and asked applicant to look at the plans and bid on the framing/carpentry work. Applicant understood Germann was the homeowner and not a professional builder or contractor. Applicant was told by Rodriguez that he had recommended applicant to Germann as a qualified carpenter. At that time, applicant was a journeyman carpenter and a member of the Carpenters' Union Local 2308, Fullerton, California. At the time of injury applicant did not have a contractor's license.[3]

After examining the plans, applicant told Germann he would prefer to be paid by the hour for the job as it was difficult to estimate how long it would take to do the type of room addition specified by the plans. Applicant also said he would bring three or four others to help on the job. Applicant also wanted to do the work around his regular union job.

---

[2]Germann has no workers' compensation insurance policy to cover applicant. Benefits awarded by the Board would be paid by the Uninsured Employers Fund of the State of California (Fund) if Germann fails to pay the awarded benefits (Lab. Code, § 3716); the Fund then may seek reimbursement from the employer (Lab. Code, § 3716.1 et seq.).

[3]Subsequent to his injury applicant went through a contractor's license school and became a licensed contractor but has not worked as a contractor.

Applicant and Germann entered into no formal written contract for the job. Applicant brought four other workers to help on the carpentry work. Germann left it up to applicant concerning how much other help was needed for the carpentry work. All were paid by the hour. Germann kept track of the hours; and, each of the carpentry workers, including applicant, was individually paid by the hour with no withholding for taxes or Social Security.[4]

Applicant was in charge of directing the other carpentry workers. Rodriguez did try to explain to applicant how he, Rodriguez, interpreted the woodwork according to the plans; Rodriguez, however, never told applicant to perform the work differently than applicant was doing it.

Although Germann was present when applicant was doing the work, Germann at no time told applicant how to do the job. Applicant even looked at the plans and made up the list of lumber that was needed for the carpentry work. Germann then ordered the necessary lumber.

Germann worked along with applicant and the others in an attempt to save time and money in completing the job. Germann would carry lumber and applicant acknowledged that on occasion applicant told Germann what lumber to carry and where to carry it. According to Germann, he would do whatever applicant told him to do (carry lumber, tear off the old roof, etc.). He admitted that he was not really aware of the "legal distinction between a contractor and an employee." Germann had not at any time previously worked on a home.

The injury herein complained of occurred when applicant slipped on an electric cord and fell off the roof.

## II

Affirming the workers' compensation judge's finding that applicant was an employee of Germann rather than an independent contractor, the Board stated in its opinion:

"Labor Code Section 5705 places the burden of proof on [Germann] to establish that applicant was actually an independent contractor rath-

---

[4]Applicant charged Germann an hourly wage higher than union scale as Germann was not paying "health and welfare or vacation."

er than an employee. In determining whether [Germann] has met this burden, we consider such questions as the right to control the way the work is performed, whether a termination of the relationship before completion would give rise to legal liability, how payment is to be made, who furnishes the materials, whether the services are being performed as part of a regular business, whether a special license is required and what the parties actually thought they were agreeing to.

"This is a case in which we can give little weight to the question of right of control. For though [Germann] has shown that he did not actually exercise supervision over the way applicant performed his duties, [Germann] had hired an architect who prepared blue prints and who was present at the job site. There is little if anything in the record to show what sort of authority that applicant recognized that the architect had over him. We therefore must look to the other factors listed above. It is true that the work was not performed as part of [Germann's] normal business and that defendant did not furnish applicant's tools, but the more significant factors point to an employment relationship. More specifically, the substance of the agreement of the parties was that applicant would do carpentry work on an hourly basis. [Germann], whose burden it is to establish that applicant was an independent contractor, has not shown that the parties agreed that [Germann] would not hire another carpenter, or on the other hand, that applicant agreed to do anything more than work on an hourly basis.[2] In fact [Germann] testified that he did not at the time think of the distinction between an employee and independent contractor. Consequently, the intent of the parties, as manifested by their acts, cannot legitimately be interpreted as having created an independent contractor relationship. Thus, under Labor Code Section 5705 applicant is an employee.[3]"

### III

The character of the relationship, that is whether employee or independent contractor,[5] is a factual determination for the Board. The

"[2]This is not only apparent from the testimony as to the conversations between applicant and [Germann], but also from the fact that applicant was evidently not holding himself out as a contractor for carpentry work." (Fn. by Board.)

"[3]The cases cited by [Germann] involved specific instances in which an independent contractor relationship was found. In none of those cases did the courts indicate that the ultimate issue was something other than the question of what was the manifested intent of the parties." (Fn. by Board.)

[5]Labor Code section 3353 provides: "'Independent contractor' means any person who renders service for a specified recompense for a specified result, under the control of his

finding will not be disturbed on appellate review where the finding is "supported by inferences which may fairly be drawn from the evidence, even though the evidence be susceptible of opposing inferences." (*Bates v. Industrial Acc. Com.* (1958) 156 Cal.App.2d 713, 717 [320 P.2d 167].) However, where the facts support only a single inference and conclusion, the question is one of law and a contrary finding by the Board is not sustainable on review. (*Perguica v. Ind. Acc. Com.* (1947) 29 Cal.2d 857, 859 [179 P.2d 812]; *Greenaway v. Workmen's Comp. App. Bd.* (1969) 269 Cal.App.2d 49, 54 [74 Cal.Rptr. 452].)

█ The Labor Code establishes a presumption in favor of a finding in an employer-employee relationship, unless the relationship is shown to be one of principal-independent contractor. (Lab. Code, § 3357.) The contention that the injured worker was an independent contractor is an affirmative defense assertable by the alleged employer; and the alleged employer has the burden of proving that the injured worker was an independent contractor. (Lab. Code, § 5705; *Guarantee Ins. Co. v. Ind. Acc. Com.* (1955) 137 Cal.App.2d 691 [290 P.2d 920]; *Calif. etc. Ins. Co. v. Ind. Acc. Com.* (1948) 86 Cal.App.2d 861, 866 [195 P.2d 880].)

█ The factors which may determine whether a relationship is in fact that of an employer-employee or independent contractor generally include: (1) the right of control over the mode and manner in which the work is done; (2) the employer's right to terminate the employee services, and the employee's right to quit when he wishes, without either incurring liability for failure to complete the job; (3) a distinct occupation or business on the part of the person performing service; (4) the nature of the occupation, i.e., the special skills or training necessary to render the service; (5) who supplies the instrumentalities, tools, and place of work; (6) the length of time required to render the service; (7) the method of payment; and (8) the parties' belief as to the arrangement they have created. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1981) § 4.02[2][a].)

█ Not all these factors are of equal weight. The decisive test is the right of control, not only as to results, but as to the manner in which the work is done. (2 Hanna, *supra*, § 4.02[2][b].) Generally, however, the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations. (2 Hanna, *supra*, § 4.02[2][a].)

principal as to the result of his work only and not as to the means by which such result is accomplished."

■ In addition, it has been suggested that in determining whether or not an injured person is an employee or independent contractor for purposes of workers' compensation coverage, rather than relying merely on traditional tests for determining that issue a court should also consider: (1) the purpose of this statute and the intention of the Legislature; (2) the persons sought to be protected; (3) whether he or she is not of a class of persons generally intended to be protected; (4) whether there are any other specific statutory exclusions, and (5) what are the relative bargaining positions of the parties mentally, economically, and educationally. (*Johnson* v. *Workmens' Comp. Appeals Bd.* (1974) 41 Cal. App.3d 318, 322-323 [115 Cal.Rptr. 871].)[6]

---

[6]Subsequent to the injury herein, by Statutes 1978, chapter 1246, section 1, page 4058, the Legislature enacted Labor Code section 2750.5 which provides as amended by Statutes 1979, chapter 605, section 1, page 1879:

"There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor. Proof of independent contractor status includes satisfactory proof of these factors:

"(a) That the individual has the right to control and discretion as to the manner of performance of the contract for services in that the result of the work and not the means by which it is accomplished is the primary factor bargained for.

"(b) That the individual is customarily engaged in an independently established business.

"(c) That the individual's independent contractor status is bona fide and not a subterfuge to avoid employee status. A bona fide independent contractor status is further evidenced by the presence of cumulative factors such as substantial investment other than personal services in the business, holding out to be in business for oneself, bargaining for a contract to complete a specific project for compensation by project rather than by time, control over the time and place the work is performed, supplying the tools or instrumentalities used in the work other than tools and instrumentalities normally and customarily provided by employees, hiring employees, performing work that is not ordinarily in the course of the principal's work, performing work that requires a particular skill, holding a license pursuant to the Business and Professions Code, the intent by the parties that the work relationship is of an independent contractor status, or that the relationship is not severable or terminable at will by the principal but gives rise to an action for breach of contract.

"In addition to the factors contained in subdivisions (a), (b), and (c), any person performing any function or activity for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code shall hold a valid contractors' license as a condition of having independent contractor status.

"For purposes of workers' compensation law, this presumption is a supplement to the existing statutory definitions of employee and independent contractor, and is not intended to lessen the coverage of employees under Division 4 and Division 5."

The 1979 amendments merely substituted the words "employees under Division 4 and Division 5" (i.e., the Workers' Compensation Act) in the last paragraph for "Section 3353 of the Labor Code."

Instructive is *Perguica* v. *Ind. Acc. Com.* (1947) 29 Cal.2d 857 [179 P.2d 812]. There Perguica, a farmer, was having a house constructed on his farm. Perguica hired one Witmer to do his plastering with payment by a lump sum. Before Witmer could do the plastering, wire netting or screening had to be attached to the outside of the house to serve as a lathing for the plaster. Witmer introduced one Walker to Perguica as the man who could put up the wiring. Perguica was to pay Walker when the work was done. Payment was to be by the number of rolls of wire utilized. Perguica supplied the wire but Walker used his own tools. Prior to the performance of the actual work, Walker was fatally injured while transporting scaffolding to the work site. The issue was whether Walker was an employee of Perguica or an independent contractor. *Annulling* the Commission's decision, the Supreme Court found Walker was an independent contractor stating: "The controlling facts as to the working arrangement between Perguica and Walker stand undisputed, by inference or otherwise. It appears to have been simply an informal agreement showing that Perguica was interested solely in the final result to be attained, the lathing of his house; but that he had not the slightest concern either in the means by which the work should be done or in the details of its accomplishment. Perguica testified that he was a 'dairy farmer' who knew nothing about lathing or other work incident to 'the building of houses.' When asked whether he told Walker 'exactly what work there was to be done,' Perguica said: 'No, I didn't, because I didn't know; he knew.' Walker was an experienced lather, and he had undertaken to furnish his own tools and equipment. Perguica agreed to furnish the wire and pay on the 'yardage basis,' but with respect to any other phase of the work, Perguica testified: 'We don't mention anything. He just got the job. He just got the job. That is all that was said. The work should be done; then afterwards I was going to pay him then; I didn't know. I didn't know.' Walker was free to set his own hours and days for working, the length of time depending on the job's duration, for Perguica stated that he did not know whether it would take 'one day or five days.' Nor did Perguica know 'whether [Walker] was going to do it all by himself or whether he was going to have anybody to help him.' Perguica reserved no right to discharge Walker at will but Walker 'just got the job' and was to receive upon its completion 'fifteen cents a yard' for the wire used, the customary rate of pay in that locality for such a 'specialist.' While the preceding carpentering work on Perguica's house had been performed on a 'daily wage basis.' Perguica was firm in his stand that he did not want such hiring to prevail with respect to other work on his house. Thus, Perguica testified that he employed the carpenters 'by the day' because 'that's the only way I could get it [the car-

penter work]' but he was dissatisfied with such arrangement inasmuch as it permitted 'loafing around ... on [his] pocketbook.' To avoid such time-wasting practices at his expense Perguica decided to adopt a different arrangement with respect to other construction work on his house and to pay 'for the job' done, both the 'lathing' by Walker and the 'plastering' by Witmer.

"These considerations demonstrate this to be a case of independent contractorship, and that Perguica and Walker intended it as such, though they never had the opportunity to proceed under their agreement inasmuch as Walker was fatally injured before 'the wiring job' was actually commenced. Perguica not only did not reserve the right to exercise any shadow of control over Walker's work, but he could not have done so had he desired. Having no knowledge of the specialized type of work in question. Perguica 'called in' an experienced lather, 'just as one would summon a plumber, an auto mechanic, or an electrician' to work 'upon his own time and in the exercise of his own knowledge and skill.' (*Ponsetti* v. *Industrial Acc. Com.*, 5 Cal.App.2d 498, 500 [42 P.2d 1043].) It is immaterial that another element entered into the factual situation in the Ponsetti case, for the decision is precisely in point in legal principle. While the machinist there involved was 'one engaged to repair a dough mixer' for some bakers and was injured while attempting 'of his own accord' to 'grease the gears,' the fact that he so proceeded without instructions was not made the premise of the decision. Rather the determinative factor negativing the propriety of the compensation award was the working arrangement between the parties, emphasizing the bakers' lack of control over the machinist's operations because of his pursuit of 'an independent employment or occupation of a highly technical character' and their 'want of knowledge and experience in mechanical repairs.' Like considerations prevail here in fixing the status of Walker as an 'independent contractor' under the established rules.

"The award is annulled." (*Perguica* v. *Ind. Acc. Com., supra*, 29 Cal.2d at pp. 860-862.)

■ In the present matter the facts are nearly identical. Germann is not a builder or contractor but a homeowner wanting a room addition. Applicant was an experienced carpenter and member of the carpenters' union. Germann gave no instructions to applicant or the other people performing the carpentry work. Rodriguez, the architect, actually gave no instructions to applicant but only went over the plans with applicant

to ensure their proper interpretation. Indeed, applicant supervised the work and even told Germann what to do to help. Applicant and not Germann determined the number of the workers needed to assist on the carpentry. Applicant worked hours to fit his own schedule around his own regular union carpentry work.

In our view the Board overemphasized the manner in which applicant was paid for his labors. "[T]he amount of remuneration and the manner in which it is paid, although factors to be considered in connection with other tests, are not conclusive. For instance, payment may be measured by time, by the piece, or by successful completion of the service, instead of a fixed salary, and still constitute employee wages if other factors indicate an employer-employee relationship. Correlatively, designating the payment a 'salary' does not necessarily establish an employment relationship where other factors indicate an independent contractor status." (2 Hanna, *op. cit. supra*, § 4.02[2][d].) "It is a common practice, even when undertaking a specific piece of work such as construction, repair or renovation of a building, for a carpenter or painter or plumber to calculate his final charge in whole or in part on an hourly rate. This charge may include a labor charge for assistants, perhaps with a profit added. It may also include charges for materials, equipment, and insurance, or it may not. In such cases, it can be argued that the pay is not so much straight payment for the worker's own services on a time basis as a contract charge ultimately related to time." (1C Larson, Workmen's Compensation Law (1980) § 44.33 (a), pp. 8-82 to 8-83.) Thus, payment by the hour is not conclusive. (*Id.*, at pp. 8-81 to 8-82.) Along this line, significant herein is that the method of payment was at applicant's insistence since he could not give an accurate total job estimate.

Accordingly, we hold that the evidence does not support the finding that applicant was an employee of Germann. Applicant was no more an employee of Germann than a painter hired to paint Germann's house, a plumber retained to fix a clogged drain, an electrician to repair wiring, or a television repair-person to restore his television to service. No subterfuge is involved in the relationship between Germann and applicant. Further, the social policy considerations are not all in favor of applicant; the individual homeowner is in no better position than the independent worker to provide coverage under the Workers' Compensation Act. Further, liability for workers' compensation may not properly be imposed upon the homeowner where the worker has chosen to engage in work as an independent contractor.

## IV

The decision of the Board finding that applicant was the employee of Germann is annulled.

Compton, J., and Beach, J., concurred.

The petition of respondent Castro for a hearing by the Supreme Court was denied November 27, 1981.