In the Matter of the Claim of CECIL BROWN, Respondent, against ST. VINCENT'S HOSPITAL and Another, Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, January 17, 1928.

Workmen's compensation — relationship — injured employee was sent to hospital for treatment — hospital authorities recommended employment of two nurses — employer authorized employment and sister in charge telephoned to nurses' registry for nurses — claimant was one of two nurses sent — after death of employee, claimant, while sewing up incision, pricked his finger which became infected — claimant was not employee of hospital.

The claimant is a nurse. An employee of a steamship line was sent by his employer to the appellant hospital for treatment, and the authorities at the hospital recommended the employment of two special male nurses. The steamship line authorized the employment of the nurses and the sister in charge of the hospital telephoned to the nurses' registry. The claimant and another were sent to the hospital as nurses for the employee. After the death of the said employee, the claimant, as he claimed, at the direction of the sister on night duty, sewed up an open incision, and while doing so he pricked his finger with a needle, infection followed, and an award for seventy per cent of loss of use of the left index finger has been made.

The claimant was not an employee of the appellant hospital, for, while he was subject to the orders and rules and regulations of the hospital, it did not control his actions in the case, but his conduct was under the control of the patient or those who sent the patient to the hospital and accepted financial responsibility for his care.

The fact that claimant's pay was delivered to him by an official of the hospital is not controlling, since that was done as a matter of convenience to the steamship line, which accepted financial responsibility for the treatment extended to its employee.

If the claimant sewed up the incision in the body at the direction of the night sister, a new contract of employment did not arise, for no authority is shown under which she had the power to make such a contract, and, furthermore, it is not within the ordinary scope of the business of a hospital to prepare bodies for burial.

APPEAL by the defendants from an award of the State Industrial Board made on the 25th day of February, 1927.

*Pettigrew & Glenney* [*Walter L. Glenney* of counsel], for the appellants.

*Albert Ottinger, Attorney-General* [*E. C. Aiken, Assistant Attorney-General,* of counsel], for the respondents.

DAVIS, J. James Doyle was an employee of the White Star Line. On March 29, 1926, he was sent for treatment to St. Vincent's Hospital in the city of New York. The employer undertook to bear the expense of his treatment. An operation was performed on Doyle the day he was admitted. His condition became so serious that the authorities at the hospital deemed it important that he have two special·male nurses, and so informed the employer. Such employment was then authorized by the White Star Line. The sister in charge called on the telephone the Century Register which furnished nurses on notice; and the claimant and another were sent to care for the patient — the claimant being the night nurse. His duties began March thirty-first, and terminated on the night of April 5, 1926, at which time Doyle died.

An operative incision in the abdomen of the patient had been left open for drainage. The claimant testifies that after Doyle died, the sister on night duty asked him to sew up this incision, which he did. In sewing up the wound the claimant pricked his left index finger, infection followed and he has an award for seventy per cent loss of use of the left index finger.

The only question presented on this appeal is as to whether the hospital was the employer of the claimant.

The relation of master and servant, or of employer and employee, is created by contract, express or implied. (*McNamara* v. *Leipzig,* 227 N. Y. 291, 294.) In determining whether or not such relation exists where the question of the contract is obscure, certain tests may be applied as bearing on the relationship. Primarily the test is the right of the employer to control and direct the work of the employee. (*Baldwin* v. *Abraham,* 57 App. Div. 67, 74; affd., 171 N. Y. 677; *Meredosia Levee & Dr. Dist.* v. *Industrial Comm.,* 285 Ill. 68.) Other tests, sometimes of value but not fully determinative of the question, are the payment of wages, and the right to hire and discharge. (*Braxton* v. *Mendelson,* 233 N. Y. 122, 124.)

The business of a charitable corporation maintaining a hospital is to furnish to those who are ill facilities for skillful treatment and care. It does not contract to heal or attempt to heal a patient through the agency of others. At the most it undertakes to permit the use of its facilities and to supply others who will heal or attempt to heal on their own responsibility. (*Matter of Bernstein* v. *Beth Israel Hospital,* 236 N. Y. 268, 270.) In conducting this business

the corporation must have employees who are charged with administrative functions.  To such persons it is, of course, liable on its contract of employment, and it may incur liability for the acts of such employees under the doctrine of *respondeat superior* (*Hordern* v. *Salvation Army,* 199 N. Y. 233); or there may be liability for compensation to one admittedly employed and engaged at the time in duties which were " part of the administrative routine."  (*Matter of Bernstein* v. *Beth Israel Hospital, supra.*)

In this case there is testimony on the part of the claimant that the hospital employed him, directed his work and paid him.  These are mere conclusions not sustained by the basic facts.  His claim of express contract of employment by the hospital rests on the fact that a representative of the institution called up the " Registry " office and stated that two nurses were needed for a patient.  The " Registry " was an office where a record was kept showing which nurses were at the time engaged, and which were available for service.  The hospital authorities had no knowledge of what particular nurse would be sent.  They were carrying out the instructions given on behalf of the patient to secure a nurse whose time would be devoted to the patient's care.  They were an agency or instrumentality for obtaining necessary service.  When the nurse arrived it does not appear that anything more was done than to inform him concerning the patient to whom he was assigned, and to give some general directions.  The agency to employ thus assumed by the hospital was either known to the claimant or could readily have been ascertained by inquiry.

The hospital retained no right to control or direct the work of the nurse.  The superintendent might and probably did from time to time advise with the nurse regarding his duties or the care of the patient, with the purpose of seeing that he was well cared for.  But there was no authority to give particular directions or to control the services of the nurse by taking him away from his immediate duties and assigning him to the care of other patients.

A nurse is given his general directions by the patient (if he is in condition to give intelligent orders), or by the person sending the patient to the hospital and accepting financial responsibility for his care.  Both the physician and nurse may be selected by the patient or his sponsor, but if no choice is exercised, a physician from the staff or a nurse is assigned to the case.  The physician, possessing technical skill superior to that of the hospital authorities, acts on his own independent judgment.  It is his orders relative to the treatment of the case that the nurse must obey.  The hospital corporation may not interfere with this contract by discharging the one employed, nor interfere with the method of treatment,

except that it may require the patient, physician and nurse to conform with the rules laid down for the orderly governance of the hospital; and except possibly as the agent of the patient or his employer, it might terminate the service of a nurse derelict in his duty. The general rule is well settled that in such a case the hospital does not accept responsibility by contract or become liable in tort for the acts of physicians, surgeons or nurses who treat patients in the institution. (*Schloendorff* v. *New York Hospital,* 211 N. Y. 125; *Phillips* v. *Buffalo General Hospital,* 239 id. 188.)

It is true that the pay of the claimant was delivered to him by an official of the hospital. This was only a matter of convenience to the employer who reimbursed the hospital without profit for the money so advanced. Likewise, the employer paid for meals furnished claimant at the hospital, which was also a convenience to the patient. Proof of such agency does not establish an implied contract of employment.

Having thus analyzed the theories of the claimant and applied the tests determinative of the relationship of employer and employee, we reach the conclusion that such relation did not exist. There remains one fragment of evidence to be considered. Naturally the employment of claimant as a nurse would end when the patient died. But there is testimony that the nurse generally prepares the body for the undertaker. It is conceded that ordinarily the sewing up of open incisions would be the duty of the surgeon or the undertaker. If the claimant recognized that duty as one belonging to him in his capacity as nurse, then it still would be the performance of services under his original contract. If, as he says, he performed the duty at the direction of the night sister, this can constitute no new contract of employment for no authority is shown on her part to make such a contract in behalf of the hospital; and it is not within the ordinary scope of the business of such an institution to prepare bodies for burial. The finding that the claimant was employed by St. Vincent's Hospital and the award of compensation have no fundamental legal basis.

The award should be reversed and the claim dismissed, with costs against the State Industrial Board.

COCHRANE, P. J., VAN KIRK, WHITMYER and HILL, JJ., concur.

Award reversed and claim dismissed, with costs against the State Industrial Board.