In the Matter of the Claim of FLORENCE RENOUF, Respondent, against NEW YORK CENTRAL RAILROAD COMPANY and Another, Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, March 27, 1930.

*E. C. Sherwood* [*William B. Davis* of counsel], for the appellants.

*Hamilton Ward, Attorney-General*] *E. C. Aiken, Assistant Attorney-General*, of counsel], for the respondents.

DAVIS, J. The claimant is a nurse. The case is very similar in its facts to that of *Matter of Brown* v. *St. Vincent's Hospital* (222 App. Div. 402). Here, as in that case, the nurse first made claim against the hospital and an award was made in her favor. After the *Brown Case* (*supra*) was decided, the award was vacated and the proceedings were continued against the New York Central Railroad Company.

The stipulated facts in brief are these: Prior to April 5, 1927, a contract had been made between the New York Central Railroad Company and Dr. Gillespie. The railroad company agreed to pay Dr. Gillespie a stated sum per annum payable in monthly installments for professional services. Dr. Gillespie accepted the appointment as surgeon for the railroad company with headquarters at Grand Central Terminal. The company agreed at its expense to maintain an emergency hospital and furnish such supplies and equipment as in its opinion were required for the proper operation thereof. The surgeon was to have full management of the hospital and the employment of such help as might be authorized, subject to the approval of the terminal manager of the company. He was to keep such records and render such reports as might be prescribed by certain officials of the company; and was to be governed by the rules and regulations made by the terminal manager. His hours of duty were fixed and he agreed to take care of any and all persons injured in any way in connection with the operation or business

of the railroad for as long a time as might be necessary on account of such injury. He further agreed to respond promptly to calls for emergency service by proper officers of the railroad and attend any and all persons injured. Another physician was employed as an assistant. It is apparent that Dr. Gillespie became an employee of the New York Central Railroad Company and was given charge of a hospital which it proposed to maintain for the benefit of its workmen injured in traffic service.

On April 5, 1927, Daniel Spillane was accidentally injured while in the employ of the company and Dr. Gillespie was assigned to his treatment.

Apparently this emergency hospital was a separate institution. It is not clear whether Spillane was originally taken there. It is conceded that soon after he was injured, Spillane was taken to the Hospital for Ruptured and Crippled in New York city by Dr. Gillespie; that he instructed the hospital to assign private nurses to attend the patient; that he was acting within his authority in requesting such service. It was further understood that the railroad company would pay the wages of the nurses so assigned; and it did pay through the hospital as its agent nine dollars a day for each day the claimant attended Mr. Spillane, from which the hospital paid the nurse seven dollars and retained two dollars for her board.

Florence Renouf was one of the special nurses employed on the case. She was not a regular employee of the hospital but was " on registry " or " on call " and came to render special services to patients when needed. She had no duties to perform except for the patient and was only required by the hospital to observe its general rules. Her directions and orders came from the doctor who employed her on behalf of the railroad company. He alone could discharge her.

On April eleventh, while in the course of her employment, she pricked her finger with scissors used in cutting bandages. Infection followed and it became necessary to amputate the entire left index finger. There was other injury to her hand as a result of the infection constituting sixty-six and two-thirds per cent permanent loss of use of the hand.

The only dispute is whether the relation of employer and employee existed. It is difficult to follow the argument of the counsel for the carrier. Evidently his theory is that a nurse, like a physician, is engaged in an independent calling, and that neither can under any circumstances become the servant of another. This argument on its face is fallacious. While in actions against a hospital organized as a charitable corporation it has been held

that the attending physician was not a servant, and that those engaged in the work of healing, whether nurses or orderlies, cannot establish liability for negligence against the hospital on the doctrine of *respondeat superior* (*Phillips* v. *Buffalo General Hospital*, 239 N. Y. 188), that is peculiarly the rule of charitable corporations.

Such charitable corporations may have servants for whose acts they are liable (*Murtha* v. *New York Homeopathic Medical College & Flower Hospital*, 228 N. Y. 183) and persons or corporations conducting private hospitals for profit have no exemption for the negligent acts of their servants. (*Robertson* v. *Towns Hospital*, 178 App. Div. 285, 287; *Gooch* v. *Buford*, 262 Fed. 894; 30 C. J. 467, and cases cited.) Where the business is conducted for pecuniary gain, or if an election is made to insure, the employer may become liable to the employee under the Workmen's Compensation Law regardless of the fact that the employee is in the skilled class. (*Matter of Bernstein* v. *Beth Israel Hospital*, 236 N. Y. 268.)

The hospital was relieved from liability, as has been stated, because claimant was not actually in its employ and as a charitable corporation it could not be held liable as her employer under the circumstances. Ordinarily the relation of master and servant does not exist between one engaged in the practice of a profession and another who engages such service for a limited purpose or transaction. But there is no reason why such relation cannot be created; and it is common knowledge that it frequently happens that lawyers, doctors and other men of skill are employed at a regular salary for a definite period. Such a contract of employment creates the relation of master and servant. (*Greenberg* v. *Remick & Co.*, 230 N. Y. 70, 75.)

The relation of master and servant is created by contract, express or implied, as we said in the *Brown Case* (*supra*). If there is a question as to whether or not the relation exists it may be tested by the right of the employer to control and direct the work of the employee, the payment of wages, and the right to hire and discharge. (*Brown Case, supra*, p. 403.)

Here it is conceded that the railroad company employed a physician and gave him authority to select other employees whose salaries or wages were paid by the company. This claimant was so employed and paid, and was subject to the orders of the physician and could be discharged by him. The employer had intrusted the physician with superintendence and authority. The claimant *ad hoc* was the employee of the railroad company just the same as she would have been in acting as a nurse in its emergency hospital. We see no difference between this case and that where a superintendent is authorized to employ an expert mechanic for a

limited time to render some special service in repairing a locomotive. Undoubtedly the latter would be an employee of the company.

The award should be affirmed, with costs to the State Industrial Board.

WHITMYER, HILL and HASBROUCK, JJ., concur; HINMAN, Acting P. J., dissents and votes for a reversal and dismissal of the claim, on the ground that the claimant was a nurse, carrying on her independent professional calling at the time of her accident as a special nurse on this case, and she had not placed her time and service at the call of the railroad company as a superior. If it be said that she was under some control by a doctor who was under contract with the railroad company to give medical or surgical treatment to persons injured in connection with the operation of the railroad, we must assume, in the absence of evidence to the contrary, that what he should do and how he should do it in the actual treatment of the patient and in giving instructions to the nurse were left wholly to him as an independent contractor.

Award affirmed, with costs to the State Industrial Board.