268 P.2d 40]

[Civ. No. 15949.   First Dist., Div. One.   Mar. 18, 1954.]

STATE COMPENSATION INSURANCE FUND et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and GENEVIEVE LONERGAN, Respondents.

(1)

Donald Gallagher, Loton Wells and Donald V. Mitchell for Petitioners.

Everett A. Corten and T. Groezinger for Respondents.

BRAY, J.—Petition for writ of review of an award given one Mrs. Genevieve Lonergan.

## QUESTION PRESENTED

Was Mrs. Lonergan, a special duty nurse, the employee of the county of Alameda (Highland Hospital) or an independent contractor?

## EVIDENCE

The commission found that Mrs. Lonergan was the employee of the Highland Hospital, which is owned by Alameda County. The Benjamin Warren Black Memorial Fund receives money made available to it by the National Foundation for Infantile Paralysis through its Alameda County chapter. The office manager of the Alameda County Institutions is one of the trustees of the fund. Under the understanding with the Polio Foundation, if a polio patient was not able to pay for the special nurse, the Black Memorial Fund would do so. The hospital never paid from its own funds. The practice at the hospital is that if a patient needs a special duty nurse, such patient's physician informs the hospital. A deposit to cover the nurse's charges is then required of the patient or the one responsible for the patient's bills. The hospital then phones the directory of registered nurses (no connection with the hospital or county) and the directory sends a registered nurse to the hospital. This is the method followed whether the patient is to pay the nurse or her pay is to come from the fund. A special nurse is required to follow the orders of the physician attending the patient. Nurses (other than special) must follow procedure laid down by the hospital. Special nurses may choose their own methods. General nurses attend more than one patient. Special nurses attend one special patient only. The patient here was a charity patient of the hospital. Mrs. Lonergan was notified by the nurses' registry to go to Highland Hospital for a polio case. On arrival she reported to the assistant superintendent of nurses. She was referred to the nurse in charge of the post polio floor, who asked if she knew anything about a respirator. On replying that she did not, the nurse said she would orient her. The nurse spent about an hour in showing her how to work the respirator. Mrs. Lonergan then started to take care of the patient in the respirator, who was then practically unconscious. The next day while working at the respirator she was injured. Mrs. Lonergan, prior to her injury, was not informed as to who was to pay her.

She sent to the assistant director of nurses at the hospital her bill for her two days' services. The bill was made out to the patient. She was paid from the Black Memorial Fund. Highland Hospital is the only hospital in Alameda County with facilities for the care of respiratory poliomyelitis cases. The procedure for the care and treatment of all patients suffering from acute poliomyelitis is the same, regardless of whether they are pay or charity patients. The patient is placed in an artificial respirator and a special nurse is ordered by the doctor. This nurse renders service for her particular patient only.

## EMPLOYEE OR INDEPENDENT CONTRACTOR?

Ordinarily a special nurse is employed by the patient through the patient's doctor and is not subject to the interference or control of the hospital and is not an employee of the hospital. (*In re Feciuch's Estate*, 26 N.Y.S.2d 390; *Payne* v. *Santa Barbara Cottage Hospital*, 2 Cal.App.2d 270 [37 P.2d 1061]; *Brown* v. *St. Vincent's Hospital*, 22 App. Div. 402 [226 N.Y.S. 317]; *Ware* v. *Culp*, 24 Cal.App.2d 22 [74 P.2d 283].) The relation between the patient employing a special nurse and such nurse is that of independent contractor and not of employer and employee. (*Moody* v. *Industrial Acc. Com.*, 204 Cal. 668 [269 P. 542, 60 A.L.R. 299].) Ordinarily there is no relationship between a hospital and the doctors treating patients therein in the nature of employer and employee, nor are they under the hospital's control. But they may be, and such relationship may exist. In *Brown* v. *La Societe Francaise*, 138 Cal. 475 [71 P. 516], it was held that the surgeon was the servant or agent of the society (an association for mutual benefit) in treating its members in its hospital, the bylaws of the society providing for medical and surgical treatment, including the services of doctors, etc. *Inderbitzen* v. *Lane Hospital*, 124 Cal.App. 462 [12 P.2d 744, 13 P.2d 905], refers to many cases holding physicians as employees of hospitals for the purpose of establishing liability in the hospital for the tort of the physician. In that case plaintiff's injuries were caused by interns and doctors employed by the hospital which had undertaken to give plaintiff necessary hospital and medical attention. In *Bowman* v. *Southern Pac. Co.*, 55 Cal.App. 734 [204 P. 403], the railroad maintained a hospital for its employees and supplied them hospital and medical attention, and was held liable for the negligent treat-

ment of a patient by its physicians. As the cases hold that the professions of doctor and nurse are so closely allied that decisions applicable to the one apply equally well to the other (*Moody* v. *Industrial Acc. Com., supra,* 204 Cal. 668, 671; *Ware* v. *Culp, supra,* 24 Cal.App.2d 22, 28) it would appear then that special nurses can be employed by a hospital.

■ "It should be noted that a nurse or physician may be the servant of a hospital, thus requiring the application of the doctrine of *respondeat superior* even though they are performing professional acts." (*Rice* v. *California Lutheran Hospital,* 27 Cal.2d 296, 304 [163 P.2d 860].)

In our case, the patient was a charity patient, that is, the county of Alameda through its hospital was required and undertook to provide hospital and medical care to her. ■ See section 200, Welfare and Institutions Code, providing authority to boards of supervisors to provide for the care and maintenance of the indigent sick. In section 202, Welfare and Institutions Code, the board of supervisors is authorized to secure for the indigent sick hospital service from any public or private hospital. "Hospital service" as used in the section includes, among other, medical, surgical, nursing services and "such other care, service or supplies as may be necessary for the treatment of the sick or injured." Undoubtedly the same type of services may be supplied at a county's own hospital as the county may procure at other hospitals.

■ Here the medical care was performed by physicians employed by the hospital. These physicians in carrying out their duties as employees of the hospital, determined that it was necessary that the patient have the care of a special nurse and so informed the hospital, which thereupon obtained such a nurse by requesting the registry to send one. The patient here did not employ the nurse. Actually through the media of the physicians and nurse the hospital was performing its duty to its charity patient. Rather the nurse was employed by the hospital directly or through its employees, the doctors. It is unrealistic to say that the doctors were acting as agents for the patient. ■ Another determining factor is the application of the test laid down by the cases: " '. . . "The decisive test of the relationship is: Who has the right to direct what shall be done, and when and how it shall be done? Who has the right to general control? . . . In other words, the test of what constitutes

independent service lies in the control exercised. The test of control means complete control, and we must carefully distinguish between authoritative control, and mere suggestion as to detail . . ." ' " (*Ware* v. *Culp,* 24 Cal.App.2d 22, 29 [74 P.2d 283].)

██ It is a reasonable inference from the evidence in our case that the hospital had the right to general control. Mrs. Lonergan reported to the superintendent of nurses. No one told her by whom she was employed or who was to pay her. The superintendent sent her to both the charge nurse on the polio floor and the nurse in charge of the post polio floor. The latter inquired as to her knowledge of respirators and then instructed her in the use of a respirator. While this circumstance might support an inference that this instruction, as claimed by petitioner, was merely an endeavor on the part of the hospital to see that the respirator was used properly, as it might have done in the case of a special nurse employed by the patient herself, a situation similar to that in *Mountain Meadow Creameries* v. *Industrial Acc. Com.,* 25 Cal.App.2d 123 [76 P.2d 724], where the court held that there was a limited control solely indicating a desire on the part of the one exercising that control to obtain satisfactory results under the contract with the one performing the work and not sufficient control to constitute an employer-employee relationship; such a conclusion is not compelled. In view of the relationship between the hospital and this charity patient, namely, that the hospital and its staff had the sole responsibility for the patient's care, an inference readily arises that the hospital was actually controlling and directing this use. Moreover, because of that relationship it is reasonable to infer that the hospital had the right of control and the right of discharge. ██ The existence of "right of control, and not the extent of its exercise, give rise to the employer-employee relationship." (*Perguica* v. *Industrial Acc. Com.,* 29 Cal.2d 857, 859-860 [179 P.2d 812] ; *California etc. Ins. Co.* v. *Industrial Acc. Com.,* 86 Cal.App. 2d 861, 866 [195 P.2d 880].) Although the method to be pursued in the routine care of the patient was left to the judgment and discretion of Mrs. Lonergan, can it be doubted that if her services were not satisfactory to the hospital or the doctors, she would have been discharged without consulting the wishes of the patient? ██ "Strong evidentiary support of the employment relationship is 'the right of the employer to end the service whenever he sees fit to do so.' "

(*Perguica* v. *Industrial Acc. Com., supra,* 29 Cal.2d at p. 860; *California etc. Ins. Co.* v. *Industrial Acc. Com., supra,* 86 Cal.App.2d 861.) ▮▮▮ The fact that the hospital did not pay and had no funds with which to pay special nurses, is not determinative of the question of who is the nurse's employer. In *Department of Nat. Resources* v. *Industrial Acc. Com.,* 216 Cal. 434 [14 P.2d 746], one Means was held to be an employee of the Fish and Game Commission although he was paid by a commercial fisherman. There the court quoted from *Los Angeles County* v. *Industrial Acc. Com.,* 123 Cal.App. 12 [11 P.2d 434], where the salary of a deputy marshal of the Municipal Court of Los Angeles was paid by the county of Los Angeles and it was held that he nevertheless was an employee of the city of Los Angeles. " '. . . Although in most cases where the contract of employment exists between individuals, the source of payment as a rule is one of the indicia of the existence of the relationship, in cases involving governmental functions, this does not always seem to be true.' " (P. 438.) In *Claremont Country Club* v. *Industrial Acc. Com.,* 174 Cal. 395 [163 P. 209, L.R.A. 1918F 177], a caddy was held to be the employee of the country club although his wage was paid by the person using him. Highland Hospital was legally prohibited from paying a special nurse from its own funds, but that limitation would not preclude it from employing personnel for which funds are available to it from another source. Nor is Mrs. Lonergan bound by the statement sent in to the hospital. Obviously, she was not employed by the patient. She sent the statement to the county's director of nurses who stated that she would mail the check as soon as possible.

The award is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 16, 1954.