[Civ. No. 16789.   First Dist., Div. One.   Nov. 10, 1955.]

ERNEST M. FRIESEN, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Ernest M. Friesen, in pro. per., for Petitioner.

Everett A. Corten and Daniel C. Murphy for Respondents.

WOOD (Fred B.), J.—The petitioning employee questions the correctness of the respondent commission's award to him of temporary total disability compensation in the amount of $22.75 a week based upon a finding that the sum of $36.84 reasonably represents his average weekly earnings at the time of the injury. He claims a higher average earning rate, one which would entitle him to the maximum rate allowed by section 4453 of the Labor Code.

Specifically, the petitioner claims that in ascertaining his average weekly earnings the commission (1) should have used the formula prescribed by subdivision (a) instead of the method prescribed by subdivision (d) of section 4453 of the Labor Code; (2) incorrectly applied the method prescribed by subdivision (d); and (3) committed errors of computation in making the determination.

Petitioner had been a student at the University of California. Upon his graduation in February of 1953, he sought temporary work with the intention of taking up graduate studies in the fall of that year.

According to the referee's report upon which the commission's findings and award were based, there was evidence that petitioner earned from $70 to $80 in February, 1953; $127.40 from April 11th through May 9th; $61.85 a week, May 19th through June 9th; $73.85 a week, June 10th through July 20th; summarized by the referee as follows: "In other words, for the period beginning February 1, through July 20, 1953 . . . a period of 170 days, the employee earned $848.58 or an average of $35* a week. The actual weekly wage of $36.84* gives rise to a compensation rate of $22.75* a week which I believe is a fair basis for determining the earning capacity of this employee considering his program of living at the time of the injury," adding that he deemed subdivision (d) of section 4453 applicable.

The referee later (in his report recommending denial of petition for reconsideration) amplified this statement: ". . . the employee contends that his earnings were maximum. He points out that at the time of the injury, he was still acquir-

---

*$22.75 represents 65 per cent of the average weekly earnings of $35 (Lab. Code, § 4653), which latter represents 95 per cent of the average weekly earning capacity of $36.84. (§ 4453, subd. (d).)

ing an education and was in college. Though he was graduated, he had continued his education and had obtained such jobs that he could while attending classes. He was injured while actually earning maximum wages but the record was clear that this was a temporary job during vacation. As pointed out in the Report of Referee, I have taken various periods of employment since the employee left college in February, added them together and divided the same by the total number of days involved. In other words, his earnings over a period of time prior to the injury were averaged up.

"I believe that though the employee may have had the capacity to earn more money and also the willingness to earn more money, he lacked the opportunity to do so by taking himself, in effect, off the regular labor market. I think that the West case, 12 CCC 86, is applicable here."†

The "West case" is *West* v. *Industrial Acc. Com.*, 79 Cal.App.2d 711 [180 P.2d 972]; hearing by Supreme Court denied, page 727. It holds that "earning capacity at the time of injury is the touchstone of average earnings in California" (p. 722), that earning capacity is composed of three factors: "(1) ability to work; (2) willingness to work; and (3) opportunity to work" (p. 722); that it is not fair or reasonable to ignore the element of discontinuity in an intermittent workman's employment, an award in such a case is sustainable "only if computed correctly under (d), the earning capacity subdivision" (p. 724); that earning capacity under that subdivision "cannot properly be determined by reference to the rate of pay alone. . . . Fundamentally, earning capacity is total earnings measured against the period of time within which those earnings were made. Whether the earning capacity rate is identical with the pay rate depends upon the steadiness of employment. Thus, the particular wage rate an employee is receiving at the moment of injury may or may not be indicative of his actual earning capacity at that time" (p. 725); and that "earning history must be considered in arriving at earning capacity, and more often than not, it will be determinative." (P. 725.)

†This lack of opportunity to work is reflected by the following excerpt from the petition herein:

"After leaving school on Feb. 18, 1953, the applicant could not immediately find a position which would carry him through to September 1953, at which time he was to return to school, so he took odd jobs until he could find a position at which he could work until September. Prospective employers would not consider him for permanent positions because he was returning to school in the fall."

These principles were reaffirmed in a temporary employment case in *Campbell* v. *Industrial Acc. Com.*, 95 Cal.App. 2d 570 [213 P.2d 395], which distinguished *California Comp. Ins. Co.* v. *Industrial Acc. Com.*, 86 Cal.App.2d 861 [195 P.2d 880], as one in which it appeared that, although the employee worked intermittently in 1946, "in 1947 he was in excellent health, worked regularly and steadily and the court distinguished the case from that of the West case . . . for these reasons." (P. 576 of 95 Cal.App.2d.)

In view of these precedents and the logic of the situation, we are persuaded that subdivision (d) of section 4453 governs in our case and was correctly applied.

As to the asserted errors in computation, petitioner says, first, that the period of his availability for work was 151, not 170 days; i.e., that he graduated from the university on the 18th of February, 1953, hence it was error for the referee to take the 1st of February as the beginning date. However, we find in the record no evidence of the precise date of graduation. Petitioner testified that he finished his schooling "in" February. In view of that, we do not consider he is in a position to complain of the referee's taking the 1st of February for computation purposes. Moreover, the referee apparently did not use the full 170 days in making his computation. Had he done so he would, according to our computation, have obtained a smaller sum than $36.84 as the actual weekly wage rate.

Petitioner states that the referee mistakenly used the sum of $127.40 instead of $135.04, plus $5.93 of retroactive pay, for his receipts as a cannery worker during April 11 to May 9, 1953. In his petition he say that "the W-2 form issued by the company to the applicant shows that the earnings for that period" were in the higher amount. However, the transcript of his testimony at the hearing before the referee indicates that he twice stated that the correct sum for that period was $127.40.

In respect to the period May 19th through June 9th during which petitioner worked at the rate of $8.00 per day, the referee computed the total upon the basis of a week of six working days. Petitioner says he worked seven days per week. While it is true that in one part of his testimony he said he was receiving $8.00 per day seven days a week during that period, at another point he testified that he worked 19½ days during that period. The latter quite clearly tends to support the inference of a week of six working days.

In any case, the referee gave the petitioner full credit for the $156 which 19½ days would produce.

Finally, petitioner claims that the referee should have credited him with $14 a week as the value of board and room, which the evidence shows was considered worth $60 a month. The referee in converting the monthly into a weekly rate of pay took $13.85 a week as the equivalent of $60 a month. In view of the varying number of days in a month the referee's computation in this regard appears to us more precise and accurate than that of the petitioner.

In conclusion, we find no basis for disturbing the findings and award made by the commission. The award is affirmed.

Peters, P. J., and Bray, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied December 28, 1955. Carter, J., was of the opinion that the application should be granted.