**HARTFORD ACCIDENT & INDEMNITY CO., Appellant,**

v.

**Lillian B. HOOTEN et vir., Appellees.**

No. 15394.

Court of Civil Appeals of Texas, San Antonio.

Nov. 26, 1975.

Rehearing Denied Dec. 31, 1975.

Hobart Huson, Jr., Kellogg L. O'Connor, Huson, Clark, Thornton & Summers, San Antonio, for appellant.

Putman & Putman, Michael Putman, San Antonio, for appellees.

CADENA, Justice.

In this workmen's compensation case defendant, Hartford Accident & Indemnity Co., appeals from a judgment, based on a jury verdict, awarding plaintiff, Lillie M. Hooten, compensation for injuries suffered by her.

The only questions before us concern the legal and factual sufficiency of the evidence to sustain the jury findings that plaintiff, at the time of her injury, was the employee of defendant's insured, Del Rio Nursing Home and that, at such time, she was acting within the course of her employment.

Plaintiff is a nurse's aid. She had worked as a nurse's aid in hospitals and nursing homes for some years and had, from time to time, been employed for private duty by particular patients. In April, 1970, she was employed as a private duty "nurse" to care for an elderly person, Mrs. Herbst, in the home of the patient. Three or four weeks later, Mrs. Herbst suffered a mild stroke, and the attending physician decided that she should be placed in the Del Rio Nursing Home.

Mrs. Herbst's family decided that she should have private "nurses" while she stayed at the Nursing Home. Plaintiff continued to tend to Mrs. Herbst at the Nursing Home, working an 8-hour shift from 7:00 o'clock A.M. to 3:00 o'clock P.M. She continued to be paid for her services by the Herbst family.

When Mrs. Herbst was admitted to the Nursing Home, plaintiff had a conversation with Mrs. Petty, who was in charge of the Home. Mrs. Petty told plaintiff that plaintiff would be responsible for the bathing and feeding of her patient and for the general care of the patient. This included cleaning Mrs. Herbst's room, changing the bed linen daily, administering the prescribed medicines, exercising the patient, and, in general, taking care of the patient's needs. According to plaintiff, she was told that her duties included taking the soiled linens to the laundry room and returning the food trays to the kitchen after her patient had been fed. Plaintiff testified that she "had no doubt" that if she failed to perform her duties or disobeyed instructions given by the nursing supervisor or the "charge nurse" the operators of the Nursing Home could dismiss her or have her dismissed.

According to plaintiff, she was "told what to do and how they did it" at the Nursing Home by the operator of the Home

and the nurse's supervisor. Her instructions from Mrs. Herbst's son was merely that she should do whatever Mrs. Petty and the nurses told her to do. She testified as follows: "[w]hen I am on a case I am under the nurse. If she told me to go in there and stand on my head that is what I do because she is responsible to that doctor, . . . .".

It was the policy of the Nursing Home to charge private duty nurses for meals. However, plaintiff entered into an agreement with the management to the effect that if she "helped out" with the other patients, she would not be charged for her meals. The evidence is undisputed that she did, in fact, help care for other patients, and she testified that she usually stayed at the Nursing Home an extra hour in order to do this.

On the date of her injury, she was told that there would be a "State Board" inspection that day, and that it would be "appreciated" if she would bathe and feed Mrs. Herbst, change the bed linen, clean the room and change Mrs. Herbst's gown as early as possible so that all would be in readiness for the inspection. She performed these tasks, which did not differ from her daily routine, except for the fact that she apparently made an effort to perform them earlier than usual. She then took the soiled linen to the laundry room because "they were fixing to wash." Prior to going to the laundry room she had placed her patient in a wheel chair and wheeled her to the nurse's station, where she left the patient while she went to the laundry room. On the way back from the laundry room she slipped and fell, injuring her knee.

According to plaintiff, Mrs. Petty told her that while Mrs. Herbst was asleep, resting or in the sun room, plaintiff should help with the other patients. However, plaintiff stated that her primary obligation was to Mrs. Herbst, and that if Mrs. Herbst needed her she could not be forced to do anything for anyone else.

The evidence establishes that if plaintiff had not been employed by the Herbst family to take care of Mrs. Herbst, regular employees of the hospital would have attended to Mrs. Herbst's needs and would have performed all the tasks performed by plaintiff.

When plaintiff needed help in ministering to Mr. Herbst's needs, she would ask for, and receive, assistance from employees of the Nursing Home.

■ The traditional test for determining whether a relationship is that of employer and employee is the right of the alleged employer to control the details of the work. It is said that it is the right of control, rather than the exercise of the right, which is decisive. If the right of control of details goes no further than is necessary to insure a satisfactory result, the relationship is not that of employer-employee. *Anchor Casualty Co. v. Hartsfield*, 390 S.W.2d 469 (Tex. 1965); *Goodnight v. Zurich Ins. Co.*, 416 S.W.2d 626 (Tex.Civ.App.—Dallas 1967, writ ref'd, n. r. e.); Larson, Workmen's Compensation Sec. 44 (Desk. ed. 1974).

It must be borne in mind that the compensation concept of "employee" is narrower than the common law concept. For compensation purposes, Sec. 1 of Article 8309, Tex.Rev.Civ.Stat.Ann., defines the term "employee" as meaning ". . . every person in the service of another under any contract of hire, expressed or implied, oral or written . . . ." At common law, at least for purposes of vicarious liability, it is possible to create the relationship of employer-employee without a contract. Restatement 2d, Agency Sec. 221, comment c (1958).

■ There is here no evidence of a contract of hire, express or implied, between plaintiff and the Nursing Home in connection with plaintiff's acts in caring for Mrs. Herbst under her agreement with the Herbst family, as distinguished from the tasks performed by plaintiff while helping to care for other patients in exchange for her meals. The fact that plaintiff received, according to her testimony, rather detailed instructions from the nurse's supervisor is

relied on heavily by her in her brief. The fact that the hospital had established certain procedures to be followed and regulations and rules to be observed by private duty nurses is no evidence of the existence of an employer-employee relationship between plaintiff and the Nursing Home. It is abundantly clear from the record that most of the "instructions" which plaintiff received from the nurse's supervisor or from the charge nurse consisted of the mere relaying to plaintiff of instructions given by Mrs. Herbst's attending physician. In order for the Nursing Home to function efficiently, it was, of course, necessary that established procedures be followed. This would be true even if the person caring for Mrs. Herbst were her son, rather than a person employed by the Herbst family.

Nor is it important that plaintiff testified that if one of the nurses told her to stand on her head she would have done so. In the *Hartsfield* case our Supreme Court, in holding that there was no more than a scintilla of evidence of the existence of the employer-employee relationship, said that the only evidence concerning right of control was the testimony that the alleged employee would have done whatever he was told to do by the alleged employer. 390 S.W.2d at 471.

The few cases involving the status, for compensation purposes, of private duty nurses are in agreement that such persons are not employees of the hospital, although they are, of necessity, subject to regulations for the orderly governance of the hospital. *Edith A. Anderson Nursing Homes, Inc. v. Walker*, 232 Md. 442, 194 A.2d 85 (1963); *McDonald's Case*, 345 Mass. 766, 187 N.E.2d 388 (1963); *David v. Employer's Mutual Ins. Co. of Wausau*, 124 N.J.Super. 377, 307 A.2d 123 (1973); *Brown v. St. Vincent's Hospital*, 222 App.Div. 402, 226 N.Y.S. 317 (1928).

It is possible, of course, that even if plaintiff was not the employee of the hospital while performing her duties with respect to Mrs. Herbst, she could have the status of the hospital's employee with respect to other work. *Houston Fire & Casualty Ins. Co. v. Farm Air Service*, 325 S.W.2d 860 (Tex.Civ.App.—Austin 1959, writ ref'd. n. r. e.). It is clear that there is sufficient evidence to support a finding that plaintiff was the Nursing Home's employee while she was helping, in accordance with her agreement, to tend to patients other than Mrs. Herbst. But the determinative factor is her status at the time she was injured. According to her testimony, she was injured while performing a task that she routinely performed as a part of her obligation to care for Mrs. Herbst, as distinguished from a task she was called upon to perform in exchange for her meals.

Since there is no evidence to support the finding that, at the time of her injury, plaintiff was the employee of defendant's insured, the trial court erred in overruling defendant's motion to disregard such finding and render judgment for defendant.

The judgment of the trial court is reversed and judgment is here rendered that plaintiff take nothing.