[No. A048087. First Dist. Div. Four. Jan. 15, 1991.]

RON RINALDI, as Director, etc., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, LARS
JOHNSON et al., Respondents.

COUNSEL

John M. Rea, Vanessa L. Holton and Jacqueline A. Schauer for Petitioner.

Javier A. Alabart and Joseph A. Igoa for Respondents.

**OPINION**

**PERLEY, J.**—The Director of the Department of Industrial Relations (Director), as Administrator of the Uninsured Employers' Fund (UEF), seeks review of a decision by the Workers' Compensation Appeals Board (Board) subjecting the UEF to liability for injuries which applicant Abdias Albiter sustained while working on an almond ranch owned by defendant Lars Johnson. The Board found that applicant's sole employer for workers' compensation purposes was Domingo Trujillo, who agreed with Johnson to harvest and prune Johnson's almond trees. Since Trujillo did not carry workers' compensation insurance, this finding meant that any benefits due to applicant would have to be absorbed by the UEF. (See Lab. Code, § 3716.)[1]

The Director challenges the finding and order exonerating Johnson from workers' compensation liability. We have concluded that under *S. G. Borello & Sons, Inc.* v. *Department of Industrial Relations* (1989) 48 Cal.3d 341 [256 Cal.Rptr. 543, 769 P.2d 399] (hereinafter cited as *Borello*), Johnson was, as a matter of law, applicant's employer for workers' compensation purposes.

## I. BACKGROUND

Johnson owned a 40-acre almond ranch in Turlock. He employed a permanent part-time worker named Eddie Burkett as a "helper," "supervisor," or "foreman." Beginning in 1986, Johnson hired Trujillo to knock (harvest) and prune his almond trees. Johnson was one of about ten ranchers for whom Trujillo provided such services. Johnson agreed to pay Trujillo 60 cents per tree for knocking and 60 cents for pruning. Trujillo provided a crew of eight or nine workers, of which applicant was a member. Trujillo paid the crew members 40 cents per tree, retaining the 20-cent difference for himself.

On November 27, 1987, applicant was pruning trees in Johnson's orchard when the pruning shears slipped and cut his head. Applicant filed a claim

---

[1] Unless otherwise indicated, all further statutory references are to the Labor Code.

for workers' compensation benefits, identifying Johnson as his employer. Johnson's compensation insurer answered and contested the issue of employment, asserting that applicant was employed by Trujillo, whom it described as a "labor contractor." The workers' compensation judge (WCJ) ordered Trujillo joined as a defendant. Since Trujillo carried no workers' compensation insurance, the Director was also brought into the proceeding.

After a hearing, the WCJ concluded that applicant was an employee of Trujillo and not of Johnson. He ordered Johnson and his insurer dismissed as defendants. The Board denied the Director's petition for reconsideration, concluding that Trujillo was applicant's employer, Johnson was not a special employer, and Trujillo was an independent contractor rather than an employee of Johnson. Of the Supreme Court's decision in *Borello, supra,* the Board said, "the facts in the present case are different from *Borello* and therefore *Borello* is not applicable in the present case."

## II. ANALYSIS

### A. *Presumption of Employment*

A basic predicate for workers' compensation coverage is an employment relationship between the person injured and the person sought to be charged with liability. (§ 3600.) The workers' compensation act contains a "general presumption that any person 'in service to another' is a covered 'employee.'" (*Borello, supra,* 48 Cal.3d at p. 354; see §§ 3351, 3357.) "One seeking to avoid liability has the burden of proving that persons whose services he has retained are independent contractors rather than employees. (§§ 3357, 5705, subd. (a).)" (48 Cal.3d at p. 349.)

A persistent theme in the Board's analysis of the facts before us is its focus on evidence interpreted to show that Trujillo acted as the employer of the workers. In particular, the Board viewed as dispositive the facts that Trujillo hired, paid, and supervised the crew members. That evidence was probative, however, only insofar as it appeared that Johnson was not *Trujillo's* employer. If Trujillo was an employee of Johnson, then his hiring and supervision of crew members was entirely consistent with Johnson's presumed status as their employer. (See *Brietigam* v. *Industrial Acc. Com.* (1951) 37 Cal.2d 849, 852 [236 P.2d 582] [if truckers were employees rather than independent contractors, injured "swamper" hired by them was also employee of their employer]; *S. A. Gerrard Co.* v. *Industrial Acc. Com.* (1941) 17 Cal.2d 411, 413 [110 P.2d 377] [though in form an independent contractor, lessee was in fact lessor's employee; thus, so was melon picker hired by lessee]; *Yucaipa Farmers etc. Assn.* v. *Ind. Acc. Com.* (1942) 55 Cal.App.2d 234, 237-238 [130 P.2d 146] [management association claiming

right to discharge cherry harvester was his employer; alternatively, harvester was hiring agent; in either case pickers hired by him were association's employees, despite its disclaimer of knowledge of who was hired and how they were paid]; *Carlson* v. *Industrial Acc. Com.* (1931) 213 Cal. 295 [2 P.2d 154] cert. den. (1932) 284 U.S. 681 [76 L.Ed.2d 575, 52 S.Ct. 199] ["lessee" was lessor's foreman for purpose of hiring, and farmworker hired by lessee was lessor's employee]; *Winther* v. *Industrial Acc. Com.* (1936) 16 Cal.App.2d 131, 134 [60 P.2d 342] [award against grower would have been upheld had court found employment relationship between grower and hirer of injured olive picker].)

In order to carry his burden, then, it was incumbent on Johnson to demonstrate not only that the indicia of employment were lacking as between himself and crew members, but also that he was not the employer of Trujillo. This he failed, as a matter of law, to do.

### B.  *Control*

By statute, a provider of service is an independent contractor, rather than an employee, if he or she is "under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." (§ 3353.) Earlier workers' compensation cases assumed that, as in the law of torts, a principal became an "employer" only if he or she possessed "complete and authoritative control of the mode and manner in which the work is performed." (*Perguica* v. *Ind. Acc. Com.* (1947) 29 Cal.2d 857, 859 [179 P.2d 812]; see *Empire Star Mines Co.* v. *Cal. Emp. Com.* (1946) 28 Cal.2d 33, 43 [168 P.2d 686], overruled on another point in *People* v. *Sims* (1982) 32 Cal.3d 468, 480, fn. 8 [186 Cal.Rptr. 77, 651 P.2d 321].)

Here, the Board found "control" in this traditional sense lacking. It is doubtful that the evidence supporting that finding can be deemed "substantial." The Board relied primarily on the fact that Trujillo supervised the crew—a fact which, as already noted, was highly equivocal. The Board's decision did not acknowledge substantial uncontroverted evidence showing that Johnson possessed a considerable degree of control over the performance of the work.

Johnson exercised control over Trujillo, both personally and through his permanent employee, Eddie. Johnson testified that he told Trujillo "how exactly [he] wanted [the work to be] done." Trujillo testified that Eddie supervised him sometimes and "had the authority to order [Trujillo] or the other workers regarding the way they were pruning or knocking."

It is true, but of little significance, that Johnson exercised no personal supervision over crew members.[2] That fact would tend to rebut the presumption of employment only if it could be reasonably inferred that Trujillo's power over crew members was independent of Johnson's, i.e., that Johnson had no *right* to direct the performance of the crew.[3] But the evidence is otherwise: Eddie, whose acts are imputed to Johnson, felt free to advise Trujillo on crew members' performance in the apparent expectation that his instructions would be relayed to the workers. Thus, Johnson testified that if Eddie was dissatisfied with the work he would communicate that to Trujillo, who would communicate it to the workers. Trujillo testified that Eddie would "comment" to him about "the quality of the other workers' work," and that if Eddie had a complaint about their work he would ask Trujillo to communicate it to them. The absence of more direct supervision appears attributable not to any limitation on Johnson's power, but rather to the simplicity of the work, the existence of a language barrier, and an apparent division of supervisory jurisdiction between Eddie and Trujillo.

Of considerable significance, but overlooked by the Board, was uncontroverted evidence that Johnson had the power to discharge both Trujillo and crew members.[4] Johnson testified that although the occasion never arose, he would "consult with Trujillo" if a worker "needed to be fired" and he "supposed" he had the authority to discharge workers himself. Trujillo testified that Johnson "of course" had the authority to fire him or crew members. So far as the record shows, Johnson could discharge Trujillo for any reason or no reason. A worker's exposure to discharge for disobedience has been called the "real test" of common law control, and the right to discharge without cause has been described as a "conclusive" indicator of employment. (*Toyota Motor Sales U.S.A., Inc.* v. *Superior Court* (1990) 220 Cal.App.3d 864, 875 [269 Cal.Rptr. 647], and cases there cited.)[5]

Given this evidence that Johnson possessed the power of control over the performance of the work, and the complete absence of evidence demonstrating any limitation on that power, it is doubtful that the Board's finding of

---

[2] In *Borello* it appeared that the grower did not supervise the workers *at all*, and disclaimed the power to do so. (*Borello, supra*, 48 Cal.3d at pp. 346-348.) Such evidence is far more indicative of limited control than anything in this record.

[3] Of course, to the extent that Johnson did control crew members it would tend to make him a special employer whatever his status vis-à-vis Trujillo. (See 2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 150, p. 719.) However, that issue would arise only if Trujillo were not his employee.

[4] The Board cited only Trujillo's equivocal testimony that " 'Eddie did not have the chance to fire any of the members of the crew' because the witness (Trujillo) was the supervisor who would fire them." This evidence did not refute the unanimous testimony that Johnson himself could discharge crew members.

[5] In contrast, the grower's witnesses in *Borello* testified that they had "no right to discharge a sharefarmer or his workers during the harvest . . . ." (48 Cal.3d at p. 348.)

independent contractorship could be sustained under pre-*Borello* authorities.[6] The point need not be decided, however, for the test of control applied by the Board ceased to be the law when *Borello* was handed down, if not before. The test must now be applied "with deference to the purposes of the protective legislation. The nature of the work, and the overall arrangement between the parties, must be examined to determine whether they come within the 'history and fundamental purposes' of the statute." (*Borello, supra*, 48 Cal.3d at pp. 353-354, quoting *Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 777 [100 Cal.Rptr. 377, 494 P.2d 1].)

The precise question presented in *Borello* was whether 14 migrant "share farmers" and their working family members were employees of the grower whose crops they prepared and harvested. The head of each family signed an agreement stating that he was an independent contractor, that the family members were his employees, and that the grower would not procure workers' compensation insurance. (48 Cal.3d at pp. 346-347, 358, fn. 12.) The grower presented evidence that it did not supervise the work, could not discharge the workers during the harvest, and did not pay them.[7] (*Id.* at pp. 347-348.)

The court held that, despite the ostensible independence of the share farmers, they were employees of the grower as a matter of law. (*Borello, supra*, 48 Cal.3d at pp. 346, 360.) The grower retained all *necessary* control over the work, which was an integral part of its business; the workers were not engaged in a distinct trade or calling; and their services had little or no entrepreneurial character. (*Id.* at pp. 356-359.) The written agreement carried little weight, in part because workers' compensation serves a public interest, i.e., absorption of the costs of industrial injuries by the industries which generate them. (*Id.* at p. 358.) To treat the share farmers as independent contractors would defeat this fundamental purpose of the compensation laws by leaving them without compensation coverage and imposing the

---

[6] Respondents cite *Winther* v. *Industrial Acc. Com., supra*, 16 Cal.App.2d 131, where the court reversed a finding of employment even though the defendant grower walked through the orchard telling farmworkers to "pick the fruit clean" (*id.* at p. 136), "reserved the right to discharge any olive picker whose work was not satisfactory to him" (*ibid.*), and told one worker "to pick clean and fill the boxes, otherwise he would have to discharge him" (*id.* at p. 138). Even by pre-*Borello* standards the decision is manifestly unsound. It effectively requires the injured worker to negate the possibility that the relationship was something other than employment. The worker is under no such burden. The putative employer must show that the relationship was *not* one of employment, and this burden is not satisfied by raising a mere possibility that the power of control was limited in a manner consistent with independent contractorship. Rather it must affirmatively appear that the principal's powers were in fact so limited.

[7] Upon sale of the crop, the buyer determined the sums due the share farmers and issued checks which the grower handed out. (48 Cal.3d at pp. 346, 348.) The family heads divided the proceeds with family members as they saw fit. (*Id.* at p. 348.)

resulting costs on the workers themselves and society at large. (*Id.* at pp. 358-359.)

The court found sufficient evidence of "control" in the facts that (1) the grower exercised pervasive control over its operation as a whole; (2) the workers were an integral part of that operation; (3) the work required little supervision; and (4) such control as was necessary was accomplished indirectly. (*Borello, supra,* 48 Cal.3d at pp. 356-357.) Therefore, the court concluded, the grower "retain[ed] all *necessary* control over the harvest portion of its operations." (*Id.* at p. 357, italics in original.)

With respect to the first three factors found dispositive in *Borello,* the facts here are essentially identical: The harvesters were an integral part of Johnson's operation, which he pervasively controlled. To the extent traditional control was lacking, its absence was attributable to the simplicity of the work and not to any superior expertise vested in the workers. As Johnson testified, he never had to fire any of the crew members because no serious problems arose.

The one respect in which this case differs from *Borello* on the subject of control is the extent to which the payment system tended to ensure discipline and quality control. (See 48 Cal.3d at pp. 357, 346-347.) The workers' earnings in *Borello* depended on the quality and yield of the crop. (See 48 Cal.3d at pp. 346-347.) Here the workers were paid by the tree. Arguably, they had less direct financial incentive to perform well. To the extent this might be true, its effect here is counterbalanced by—and may explain—the more direct forms of control exercised here, which had no equivalent in *Borello.* Johnson exercised "all *necessary* control" over the harvesters, and the test enunciated in *Borello* was satisfied as a matter of law.

## C. *Other Factors*

The holding in *Borello* was supported by additional criteria which appear equally or more applicable here. There is no evidence that Trujillo "held himself out as being in business"; all the record shows is that Johnson was introduced to him by a third person.[8] Nor does it appear that Trujillo engaged in a distinct trade or calling. Almond harvesting apparently re-

---

[8] Respondents assert that Trujillo's status as an independent businessman was reflected in his testimony that he sometimes had "two crews" working on different ranches. In fact, Trujillo testified that there was only one crew, some members of which might start work at a new ranch while others were finishing at another. At those times, Trujillo would travel between the two ranches supervising both groups. Assuming both ranchers treated Trujillo as an employee, this evidence merely established a case of "concurrent employment." (See 2 Witkin, *op. cit. supra,* Workers' Compensation, § 153, p. 722.)

quires no more special skills or equipment than cucumber harvesting. No basis appears for treating it as a specialized occupation. (See *Borello*, 48 Cal.3d at p. 357.)

The Board attempted to distinguish *Borello* on the ground that the workers there were "without a common supervisor other than Borello" whereas "the members of the Trujillo crew had a common supervisor, Trujillo." The suggested distinction is of doubtful relevance. Moreover, it is unsound. The grower in *Borello* dealt with the heads of family, each of whom agreed to furnish himself "and the members of his family" to harvest the crop. (48 Cal.3d at p. 346.) The contract purported to make nonsignatory workers "employees" of the signatories, who paid them as they chose. (*Id.* at pp. 358, fn. 12, 348.) The court's holding extended to both signatories and nonsignatories. (*Id.* at pp. 345, 346, 347, 357, 359, 360.) Applicant's position is analogous to that of the nonsignatory family members.

The Board also sought to distinguish *Borello* on the ground that the workers there spent several weeks preparing and harvesting the crop whereas "Trujillo and his crew arrived at the Johnson ranch just in time to do the harvest and for the sole purpose of harvesting the crop." This is not an accurate description of the evidence at bar. The workers performed two separate tasks (knocking and pruning) in two, or perhaps four, separate "sessions" of work. Although the testimony was ambiguous, it appears that they spent at least two and perhaps four weeks in Johnson's orchard. ■ In any event, the duration of service has never been more than a secondary factor in distinguishing employment from independent contractorship. (See *Perguica* v. *Ind. Acc. Com.*, *supra*, 29 Cal.2d 857, 860 [fifth of eight "other factors to be taken into consideration"].) Nor was it significant in *Borello*; far more pertinent was the fact that the workers were "a regular and integrated portion of [the grower's] business operation." (*Borello*, *supra*, 48 Cal.3d at p. 357.)

■ Conspicuously absent here is any evidence that the parties attempted to explicitly characterize their relationship as something other than employment or to allocate the responsibility for securing the payment of compensation. The most that can be said in favor of Johnson's position is that the evidence supports an inference that he did not view himself as an employer. But the same may be said of Trujillo: he no more assumed the responsibilities of an employer than Johnson did. In fact, both he and applicant seemed to view his status as something less. He described himself as the crew's "supervisor." Applicant called him the "foreman." Both of them referred to Johnson as "the boss." Johnson's unspoken assumptions about the nature of the relationship are not entitled to greater weight than

the explicit agreement in *Borello*, particularly since they seem contrary to the understanding of the other affected parties.

Respondents concede that crew members were within the class sought to be protected by the compensation statutes, but assert that it was Trujillo's responsibility to secure compensation insurance. This argument cannot succeed. The workers in *Borello* had ostensibly assumed this same responsibility by express agreement. Here there is no evidence that Trujillo undertook any such responsibility. At most, Johnson assumed that he had. If the express agreement in *Borello* could not shift the responsibility for compensation to an intermediary, surely that responsibility is not shifted by an ambiguous handshake arrangement which encourages both parties to deny responsibility for industrial injuries. To hold otherwise would virtually guarantee that in all such cases the costs of injuries would be borne by society at large through the Uninsured Employers' Fund.

## D. *Farm Labor Contractor*

A farm labor contractor is someone who, for a fee, supplies agricultural workers to a third person.[9] Farm labor contractors are licensed and regulated by the Labor Commissioner. (§ 1683.) The WCJ found that even though Trujillo lacked the required license, he was a farm labor contractor. The parties appear to accept this finding for purposes of argument, but follow it to opposite results.

Respondents seem to contend that if Trujillo was a farm labor contractor then he was, ipso facto, the employer of the crew. We find no legal basis for this assertion. The workers' compensation act does not exempt farm labor contractors from the statutory definition of employees. (See § 3351 et seq.) Where a labor contractor renders service (as by actually supervising the work), he or she is presumptively an "employee" unless shown to be an independent contractor. (See § 3357.) This interpretation is reinforced by the statutory definition of a "farm labor contractor" as someone who (1) "employs" the workers *or* (2) "recruits, solicits, supplies, or hires" them "on behalf of an employer" and, in addition, provides any of several designated services. (See fn. 10.) It follows that a farm labor

---

[9] " 'Farm labor contractor' designates any person who, for a fee, employs workers to render personal services in connection with the production of any farm products to, for, or under the direction of a third person, or who recruits, solicits, supplies, or hires workers on behalf of an employer engaged in the growing or producing of farm products, and who, for a fee, provides in connection therewith one or more of the following services: furnishes board, lodging, or transportation for such workers; supervises, times, checks, counts, weighs, or otherwise directs or measures their work; or disburses wage payments to such persons." (§ 1682, subd. (b).)

contractor is not necessarily the employer of the workers hired, and his or her involvement does not prevent a finding that the grower is the employer.

This is not to suggest that the involvement of a bona fide farm labor contractor would never affect the allocation of workers' compensation liability. Possession of a required license and operation of a bona fide independent business are factors suggesting independent contractorship. (*Borello*, *supra*, 48 Cal.3d at pp. 351, fn. 5, 354, 357.) Further, a grower may be able to limit his or her compensation insurance costs by ensuring that the farm labor contractor acts as an employer and secures the payment of compensation for the supplied workers. (See *Riley* v. *Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242, 1251 [250 Cal.Rptr. 718] ["labor broker" as general employer]; Ins. Code, § 11663 [compensation carrier for general employer liable for entire claim of covered worker, as against carrier of special employer).) The point here is that the participation of a farm labor contractor—particularly an unlicensed one—does not of its own force relieve the grower of responsibilities otherwise imposed by law.

The Director urges us to hold that where a grower engages workers through an unlicensed farm labor contractor the grower should be estopped to deny that the workers are his or her employees. The decision whether to adopt or reject such a rule is unnecessary to the resolution of this case. Here it is enough to conclude, as we have, that as a matter of law, Trujillo was not applicant's employer, and Johnson was.

The order under review is set aside. The matter is remanded and the Board is instructed to enter an order declaring that on the date of injury, respondent Lars Johnson was applicant's employer for purposes of workers' compensation coverage.

Anderson, P. J., and Poché, J., concurred.